## STATE v. CHARLES TIMOTHY OTT.

189 N. W. (2d) 379.

August 13, 1971—No. 42559.

*Warren Spannaus,* Attorney General, and *Linn Slattengren,* County Attorney, for the state.

*John H. Rheinberger,* for defendant.

Heard before Knutson, C. J., and Rogosheske, Peterson, Kelly, and Rolloff, JJ.

CLARENCE A. ROLLOFF, JUSTICE.*

This matter comes before the court upon a certification by the trial court that the question presented is important and doubtful. Minn. St. 632.10.

On May 7, 1970, an information was filed charging defendant, Charles Timothy Ott, with three counts of aggravated assault in violation of Minn. St. 609.225, subd. 2. One count charged that defendant assaulted a police officer "with a dangerous weapon but without the intent to inflict great bodily harm to-wit: Pointed an unloaded 12 gauge shotgun at him and threatened to shoot him with it, the victim then and there believing it [to be] loaded." [1] The other two counts are identical except as to the names

---

*Acting as Justice of the Supreme Court by appointment pursuant to Minn. Const. art. 6, § 2, and Minn. St. 2.724, subd. 2.

[1] The information was drafted using the language of Minn. St. 1967, § 609.225, subd. 2, as it stood prior to a 1969 amendment, L. 1969, c. 738, § 1. At the time of the offense Minn. St. 609.225, subd. 2, provided: "Whoever assaults another with a dangerous weapon but *without inflicting great bodily harm* * * *." (Italics supplied.) Defendant claims no prejudice on this ground and we treat the information as though properly worded.

of the parties assaulted.[2]

The defendant moved to dismiss the information on the ground that it does not allege facts sufficient to charge him with the crime of aggravated assault. The trial court denied the motion. On application of the defendant, the trial court certified the following question as important and doubtful, to-wit:

"Does the pointing of an unloaded shotgun in the manner as alleged in the Information, the defendant knowing the same to be unloaded, constitute a violation of M. S. A. 609.225, Subd. 2 (Aggravated Assault)?"

We are of the opinion that this information is sufficient to allege a provable offense under Minn. St. 609.225, subd. 2, and therefore answer the certified question in the affirmative.

Minn. St. 609.225 identifies those persons who have committed aggravated assault as follows:

"Subdivision 1. Whoever assaults another and inflicts great bodily harm may be sentenced to imprisonment for not more than ten years or to payment of a fine of not more than $10,000, or both.

"Subd. 2. Whoever assaults another with a dangerous weapon but without inflicting great bodily harm may be sentenced to imprisonment for not more than five years or to payment of a fine of not more than $5,000, or both."

---

[2] The facts which gave rise to this case as recited in the police complaint are as follows: A police officer observed a traffic violation and followed the driver-defendant to his home. The defendant entered his house and then returned to the driveway, shouting obscenities and yelling "Get out of here or I will blow your head off" to the officer and two other officers who had arrived at the scene. Defendant returned to the house and ran out with a 12-gauge shotgun. He pointed the gun at the late-arriving officers and then approached the first officer and pointed the gun at his head. That officer knocked the gun from defendant's hand and discovered it was unloaded. Until that moment, all the officers had been in fear of bodily harm because of defendant's actions.

Subdivision 1 establishes that the intentional infliction of great bodily harm constitutes aggravated assault. One is guilty of a violation of subd. 2 only if (1) he assaults another, (2) with a dangerous weapon, and (3) without inflicting great bodily harm.

■ Whatever the definition of an assault may have been prior to the adoption of the Criminal Code of 1963, it is now defined by Minn. St. 609.22. For our purposes, only § 609.22(1) is directly pertinent.[3]

Section 609.22(1) states that a person commits an assault by doing "an act with intent to cause fear in another of immediate bodily harm or death." Under this section the intent of the actor, as contrasted with the effect upon the victim, becomes the focal point for inquiry. The ordinary effect upon others of the acts alleged to constitute the crime may naturally be taken into account to determine intent, as may any other fact, such as whether the actor knew that he did not have the present capability to effect bodily harm or death. Whether such intent exists is for the factfinder to determine. The allegation of an assault in the information is sufficient against attack here despite the fact that the acts recited in the information are "victim-" rather than "actor-oriented."

■ The second constituent element of aggravated assault under § 609.225, subd. 2, a dangerous weapon, is also present in the allegations of the information and will, if proved as charged, support a conviction. There is great conflict as to whether the use of an unloaded gun against another can constitute an assault. See, 79 A. L. R. (2d) 1412. In this state that conflict has been resolved by statute. Minn. St. 609.02, subd. 6, defines a danger-

---

[3] Minn. St. 609.22(2) states that one who "[i]ntentionally inflicts or attempts to inflict bodily harm upon another" commits an assault. It is noted that § 609.22 apparently punishes without distinction both what the common law regarded as "criminal assault" and what was known as "civil assault." See, Perkins, *An Analysis of Assault and Attempts to Assault,* 47 Minn. L. Rev. 71.

ous weapon as "any firearm, whether loaded or unloaded, or any device designed as a weapon and capable of producing death or great bodily harm, or any other device or instrumentality which, in the manner it is used or intended to be used, is calculated or likely to produce death or great bodily harm." There is no doubt that an unloaded 12-gauge shotgun is a dangerous weapon as defined.

■ The third requisite under § 609.225, subd. 2, is that the actions be accomplished "without inflicting great bodily harm." Defendant argues that these words imply that there must be *some* bodily harm in order to sustain a conviction under subd. 2. To hold otherwise, he asserts, is to render the word "great" meaningless, a result barred by our rules of statutory construction. Minn. St. 645.17 (2). That contention cannot be sustained. Recent case law does not support a holding that physical harm is a requirement to convict under Minn. St. 609.225, subd. 2. In State v. Mickens, 276 Minn. 343, 150 N. W. (2d) 30, we sustained a conviction for aggravated assault in violation of Minn. St. 1967, § 609.225, subd. 2. The facts were essentially that the defendant had pointed a gun at two strangers, forcing them to lie on the floor of a garage while he took an airport limousine. He did not harm them. See, also, State v. Anton, 270 Minn. 129, 132 N. W. (2d) 751.

Not only does case law fail to support defendant's contention, the very structure of the aggravated assault statute also rebuts his claim. Section 609.225, subd. 1, speaks in terms of the intentional infliction of "great bodily harm." The parallel use of the same phrase in subd. 2 can only indicate an intent to cover all situations not within the scope of subd. 1. This necessarily includes an assault with a dangerous weapon where no harm is inflicted and such an assault where there is some bodily harm not amounting to "great bodily harm." [4]

---

[4] Minn. St. 609.02, subd. 8, provides: " 'Great bodily harm' means bodily injury which creates a high probability of death, or which causes serious permanent disfigurement, or which causes a permanent or pro-

Had the legislature intended the result for which defendant contends, it would have been a simple matter to have so stated. As § 609.225, subd. 2, stands, there need be no showing of bodily harm for a conviction thereunder. We are not persuaded that this result is one unintended by the legislature. As the statute now reads, it reflects a legislative determination that the use of a dangerous weapon to criminally assault another is equally reprehensible whether or not one inflicts harm. That position is certainly a valid one.

Likewise, the legislative determination that the use of either a loaded or unloaded firearm in an assault is punishable to the same degree reflects a permissible legislative policy position with which this court may not interfere. See, State v. Mathiasen, 273 Minn. 372, 141 N. W. (2d) 805. If the legislative concern is to protect society from an assault upon one of its members, it is not illogical to conclude that the use in an assault of an unloaded firearm may have as devastating an effect upon community well-being as the use of a loaded firearm.

We are fully aware of those facts which defendant claims indicate the purportedly inadvertent and unintended nature of the result we now reach. It is true that there are substantial differences between how the case before us is treated under our interpretation of § 609.225, subd. 2, and the manner in which the same situation would be handled under the statutory frameworks which provided the model for Minnesota—the Illinois and Wisconsin law and the American Law Institute's Model Penal Code.[5] However, the very idea of a state advisory committee anticipates the proposal and enactment of what the committee and the legis-

tracted loss or impairment of the function of any bodily member or organ or other serious bodily harm."

[5] The advisory committee which drafted our criminal code apparently had the Illinois and Wisconsin statutes and the A. L. I. Model Penal Code before it as it worked. See, Advisory Committee Comment, 40 M. S. A. p. IX. See, also, Ill. Rev. Stat. 1967, c. 38, §§ 12-1 to 12-4; Wis. Stat. 1967, §§ 940.20, 940.22, and 941.20; A. L. I. Model Penal Code, Tentative Draft No. 11, April 27, 1960, §§ 211.1 to 211.4.

lature feel is in the highest public interest. This inevitably requires rejection of some very sound ideas in favor of others felt to be better. We do not believe that the legislature was unaware of the result we reach, despite the fact that the advisory committee does cite the very facts of this case as an example of a simple assault. Advisory Committee Comment, 40 M. S. A. p. 262. The comment by Professor Maynard E. Pirsig, reporter for the committee, indicates that the committee and the legislature were aware that these same actions are also within the scope of § 609.225, subd. 2. See, 40 M. S. A. p. 262.

What we have said with reference to the advisory committee comment applies with equal validity to the suggested forms of pleading for §§ 609.22 and 609.225, prepared by the attorney general, which, if they were taken as the sole barometer of legislative intent, would substantiate defendant's contentions. See, Suggested Forms of Pleading, §§ 609.22, 609.225, 40A M. S. A. p. 448.

That the defendant could have been charged with simple assault does not mean that he had to be so charged. The prosecutor has discretion in selecting the statute under which a person is to be charged. See, State v. Anderson, 280 Minn. 461, 159 N. W. (2d) 892; State v. Mathiasen, *supra*.

We are therefore of the opinion that an information charging assault by means of pointing an unloaded firearm at another and threatening to shoot him therewith, as alleged in the information, but without inflicting great bodily harm, states an offense under Minn. St. 609.225, subd. 2. Consequently, the question certified is answered in the affirmative.