**Leroy JOHNSON, Petitioner, Appellant,**

v.

**STATE of Minnesota, Respondent.**

No. C1–87–2332.

Court of Appeals of Minnesota.

March 22, 1988.

Review Denied May 4, 1988.

---

Bradford Colbert, Smith, Juster, Feikema, Malmon & Haskvitz, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin Co. Atty., Vernon E. Bergstrom, Chief Appellate Section, Beverly J. Wolfe, Asst. Co. Atty., Minneapolis, for respondent.

Heard, considered, and decided by WOZNIAK, C.J., and SEDGWICK and SCHUMACHER, JJ.

## OPINION

WOZNIAK, Chief Judge.

Appellant Leroy Johnson was convicted of first degree assault under Minn.Stat. § 609.221 (1984) and illegal possession of a short-barreled shotgun under Minn.Stat. § 609.67, subd. 2 (1984). On appeal, Johnson claims the trial court erred in its in-

structions to the jury, the evidence was insufficient to sustain the shotgun possession conviction, and that the post conviction court erred in determining his sentence. We affirm in part, reverse in part, and remand.

## FACTS

In October 1985, Leroy Johnson resided with his girlfriend, Shelley Taylor, in a duplex with Taylor's two sisters, her mother, and her mother's boyfriend, Robert Foote.

On October 25, 1985, Shelley Taylor's mother and Foote were in their bedroom drinking vodka and watching television. Foote testified that he heard Shelley and Johnson arguing for about 45 minutes. Shelley's mother testified that she heard no argument, and Johnson stated that he and Shelley were not involved in an argument. At any rate, Shelley entered the bedroom and asked her mother to tell Johnson to leave, but her mother refused to get involved.

Shortly thereafter, Foote entered the living room and asked Johnson to leave the apartment. Foote entered the room carrying a jackknife he had been playing with while he was in the bedroom, but he placed the knife in his pocket as he approached Johnson. Foote stated that he opened the door and Johnson left the apartment.

Johnson, however, testified that he was leaving the apartment when Foote ran to the door and blocked his exit. He claimed Foote was carrying the jackknife as he blocked the door. Johnson testified that he was only able to leave the apartment when Shelley pounded on the door, causing Foote to open the door.

Approximately 45 minutes later, Johnson returned to the apartment carrying a loaded single-barreled shotgun under his coat. Johnson testified that he returned to the apartment to find out what Foote's "problem" was, and that he carried the shotgun for protection. After Johnson returned to the apartment, Foote was warned not to leave the bedroom because Johnson was carrying a gun. Foote testified that he entered the living room unarmed, told Johnson to give him the gun, and was shot when he reached for the weapon.

Johnson claimed that, as he held the gun, he questioned Foote regarding the problems they were having with each other. He stated that Foote had entered the living room and threw his knife at him, but missed. After Foote threw the knife, the shotgun accidentally discharged when Shelley Taylor pulled on his arm.

Shelley Taylor's testimony corroborated Johnson's story. However, the day of the shooting, she told police officers that Foote had asked Johnson to leave following her argument with Johnson, and that Johnson returned shortly thereafter and shot Foote.

The shot struck Foote in the groin, shattering his pubic bone, tearing his bladder, and injuring his penis and testicles. Johnson fled the state and was apprehended in Kansas City in February 1986.

The jury found Johnson guilty of first degree assault and possession of a short-barreled shotgun, but acquitted him of attempted murder in the second degree under Minn.Stat. § 609.19(1). The trial court imposed sentences of 15 months imprisonment for the shotgun possession conviction and 76 months for the first degree assault conviction. The sentences were to run concurrent with a prior second degree assault conviction.

Johnson petitioned for post conviction relief, claiming the trial court erred in its jury instructions, the evidence was insufficient for the shotgun possession conviction, and that the trial court erred in sentencing. The post conviction court denied the petition in all respects, except for the request to vacate the sentence for the shotgun possession conviction. While the post conviction court found improper sentencing, it held the trial court's sentencing error did not affect Johnson's sentence.

## ISSUES

1. Were the trial court's jury instructions erroneous?

2. Was the evidence sufficient to sustain appellant's conviction of possession of a short-barreled shotgun?

3. Did the post conviction court err in failing to reduce appellant's sentence?

## ANALYSIS

 1. Trial courts have broad discretion in determining the propriety of a specific jury instruction. *State v. Shatto*, 285 N.W.2d 492, 493 (Minn.1979). On review, the trial court's jury instructions are considered as a whole. *State v. Daniels*, 361 N.W.2d 819, 831–32 (Minn.1985). A requested instruction will be granted if it is supported by the evidence, but the court is not required to give the instruction if the substance of it is contained in the court's charge. *State v. Ruud*, 259 N.W.2d 567, 578 (Minn.1977), *cert. denied*, 435 U.S. 996, 98 S.Ct. 1648, 56 L.Ed.2d 85 (1978).

 Johnson contends the trial court erroneously omitted the element of intent from the jury instructions on assault in the first degree. It is his position that the first degree assault offense requires proof of "intentional infliction of great bodily harm."

The trial court instructed the jury as follows:

[T]he statutes of Minnesota provide that *whoever does an act with intent to cause fear in another person of immediate bodily harm or death or intentionally inflicts or attempts to inflict bodily harm upon another is guilty of assault.* In order for an assault to have been committed, it is not necessary that there has been any physical contact with the body of the person assaulted. Now, the statutes of Minnesota provide that *whoever assaults another person and inflicts great bodily harm is guilty of assault in the first degree.*

Now, the elements of assault in the first degree in this case are three in number. Three elements, each and all of which must be proved by the State. Those elements of assault in the first degree are *first, that the defendant assaulted Robert Foote.*

*Second, that the defendant inflicted great bodily harm on Robert Foote.* Great bodily harm means bodily harm which creates a high probability of death or which causes serious permanent disfigurement or which causes a permanent or protected loss or impairment of the function of any part of the body or other serious bodily harm.

Third, the defendant's act must have taken place on or about October 25, 1985, in Hennepin County.

(Emphasis added.) The trial court also instructed the jury "when a person commits an act by accident, under circumstances that show no intention, he does not thereby commit a crime."

Before giving the jury instructions and over the objections of Johnson's attorney, the trial court granted the state's request to exclude from CRIMJIG 13.04 the following emphasized sentence regarding the three elements necessary for first degree assault:

First, defendant assaulted Foote. *This means that defendant intentionally inflicted bodily harm on Foote.*

The court followed CRIMJIG 13.04 in its entirety, except for the one deleted sentence. The court found that the CRIMJIG failed to include both definitions of assault within Minn.Stat. § 609.02, subd. 10 (1984), and deleted the additional sentence because it created an additional element for first degree assault.

Minn.Stat. § 609.221 provides that "[w]hoever assaults another *and* inflicts great bodily harm" is guilty of assault in the first degree (emphasis added). The statutory definition of "assault" as used in Minn.Stat. § 609.221 is set forth as follows:

(1) An act done with intent to cause fear in another of immediate bodily harm or death; *or*

(2) The intentional infliction of or attempt to inflict bodily harm upon another.

Minn.Stat. § 609.02, subd. 10 (emphasis added).

The statutory definition of assault thus may include either intent to cause fear of bodily harm, *or* Johnson's assertion of intent to actually inflict bodily harm. Under a literal statutory reading, either form of assault would fit within the parameters of

first degree assault, which requires assault *and* the infliction of great bodily harm. The "intent to inflict bodily harm" only is an essential element for first degree assault under the language of Minn.Stat. § 609.221 in the context that it fits one of the two definitions for assault under Minn. Stat. § 609.02, subd. 10. If the legislature had intended to include "intent to inflict bodily harm" as an essential element of first degree assault, the applicable statutory language could have been inserted in Minn.Stat. § 609.221 rather than Minn.Stat. § 609.02, subd. 10.

In 1969, the Minnesota legislature amended the predecessor to Minn.Stat. § 609.221, former Minn.Stat. § 609.225 (1967), to remove the intent element from the definition of aggravated assault. *See* 1969 Minn. Laws ch. 738. The language was changed from "[w]hoever *intentionally* inflicts great bodily harm" to read "[w]hoever assaults another and inflicts great bodily harm." Minn.Stat. § 609.225 (1969). Thus, the intent element necessary for first degree assault is obtained by reading it together with the statute defining assault (intentional creation of fear of bodily harm or intent to inflict bodily harm). *See State v. Spencer*, 298 Minn. 456, 464, 216 N.W.2d 131, 136 (1974).

No Minnesota decision has specifically addressed the intent necessary to commit a certain extent of harm for first degree assault. The Minnesota Supreme Court interpreted the predecessor to Minn.Stat. § 609.02 as establishing "that the intentional infliction of great bodily harm constitutes aggravated assault." *State v. Ott*, 291 Minn. 72, 75, 189 N.W.2d 377, 378 (1971). However, *Ott* focused upon an assault with an unloaded gun resulting in no bodily harm, and thus interpretation of a different section of the aggravated assault statute. The court examined the predecessor to Minn.Stat. § 609.221 (defining assault) and noted that fear of bodily harm also constituted assault. *Id.* at 75, 189 N.W.2d at 379. The court further stated:

> Under this section the intent of the actor, as contrasted with the effect upon the victim, becomes the focal point of our

inquiry. * * * Whether such intent exists is for the fact finder to determine. *Id.* The court recognized that intent is an essential element in assault, while at the same time held that actual intent to harm is not essential for assault.

In *State v. Spencer* at 464, 216 N.W.2d at 136, the Minnesota Supreme Court followed *Ott* in holding that the intentional infliction of great bodily harm constituted aggravated assault. *Id.* However, the trial court's instructions were found in error because the court had instructed the jury that no intent whatsoever was required to prove aggravated assault. Here, the trial court's instructions clearly stressed the need for intent when it instructed the jury as to both the definition of assault and accident.

This court recently determined the specific intent to inflict a degree of harm is not essential for first degree assault. *State v. Mosley*, 414 N.W.2d 461 (Minn.Ct.App. 1987). In *Mosley*, this court held that instructions listing only intent to inflict bodily harm, not specific intent to inflict great or substantial bodily harm, were not erroneous. *Id.* at 465. In holding that the jury instructions were not erroneous, this court noted that the instructions were almost identical to the CRIMJIG instructions for first degree assault. *Id.* Except for the one deleted sentence, the trial court similarly gave instructions almost identical to CRIMJIG 13.04.

The record demonstrates that the trial court reiterated virtually verbatim the definitions of assault and assault in the first degree under Minnesota statutes. This included the necessary intent elements for assault. Although the instruction of intent to inflict bodily harm was not given as an essential element for first degree assault, it was included in the instructions as one of the two definitions of assault. This is precisely how assault is defined in Minn.Stat. § 609.02, subd. 10. Because the instruction of "intent to inflict bodily harm" was given to the jury as one of the two definitions for assault, there is no reversible error when the same language is excluded from the first degree assault instruction.

The jury was further instructed regarding intent when the court instructed that Johnson would not be guilty of first degree assault if his action was found to be an accident. In closing arguments, counsel for both sides stressed that the assault had to be intentional. Johnson's attorney even contended that the state had to prove Johnson intended to kill or assault Foote at the moment the shotgun was fired. We find that the trial court's instructions as a whole were not erroneous.

The state claims Johnson has raised this issue for the first time on appeal. The state is clearly erroneous as the record clearly shows that Johnson's attorney objected to the deletion of the instruction of intent to inflict bodily harm, and the state was made aware of all arguments relating to this issue.

■ 2. Upon review of an insufficiency of the evidence claim, the court must determine, given the facts in the record and the inferences drawn from them, whether a jury reasonably could conclude the defendant was guilty of the offense charged. *State v. Ulvinen*, 313 N.W.2d 425, 428 (Minn.1981). Appellate courts view the evidence in the light most favorable to the state, and assume the jury believed the state witnesses and disbelieved anything that contradicted their testimony. *State v. Merrill*, 274 N.W.2d 99, 111 (Minn.1978). The verdict will not be reversed if the jury, giving due regard to the presumption of innocence and the state's burden of proving guilt beyond a reasonable doubt, could reasonably have found the defendant guilty. *Id.*

Johnson claims the evidence was insufficient to support the conviction for possession of a short-barreled shotgun in violation of Minn.Stat. § 609.67. He asserts that the state failed to prove the weapon's overall length was less than 26 inches or that the barrel was less than 18 inches long. *See* Minn.Stat. § 609.67, subd. 1(c).

Viewing the evidence in the light most favorable to the state, and assuming that the jury believed Foote's testimony, we find the evidence was sufficient to support the shotgun possession conviction. John-

son testified the shotgun was sawed-off at both ends and that he could hide the gun under his coat, while Foote testified it was approximately 22 inches long. The jury is in the best position to ascertain the credibility of the witnesses. Despite Johnson's strong attempts to impeach Foote, the jury's finding of guilt was not unreasonable.

■ 3. Finally, both sides contend that Johnson's criminal history score and sentence must be reduced. The trial court is in the best position to weigh the various sentencing options and therefore is granted broad discretion in sentencing. *State v. Back*, 341 N.W.2d 273, 275 (Minn.1983).

■ Johnson originally was sentenced for his shotgun conviction, and this conviction was used to raise his criminal history score from two to three for his first degree assault conviction. He was given the presumptive sentence of 76 months.

The post conviction court found that the two offenses arose out of the same behavioral incident, and vacated the sentence for the shotgun possession conviction. However, the post conviction court failed to reduce Johnson's criminal history score or his sentence for the first degree assault conviction.

Comment II.B.101 of the Minnesota Sentencing Guidelines provides that in cases of multiple offenses occurring during a single behavioral incident, the offender would receive one criminal history point. Adding Johnson's prior conviction to his first degree assault conviction, but negating the shotgun possession conviction, leaves a criminal history score of two. Combining the criminal history cf two with the severity level VIII offense results in a presumptive sentence of 65 months rather than 76 months. Thus, the post conviction court erred in failing to reduce Johnson's sentence from 76 to 65 months.

### DECISION

The trial court's jury instructions were not erroneous. The evidence was sufficient to sustain appellant's conviction of possession of a short-barreled shotgun.

However, the post conviction court erred in failing to reduce appellant's sentence after vacating the sentence for the shotgun possession conviction.

Affirmed in part, reversed in part, and remanded.