**STATE of Minnesota, petitioner,
Appellant,**

v.

**Jan Michael HOUGH, Respondent.**

No. C1–96–2595.

Supreme Court of Minnesota.

Nov. 5, 1998.

Hubert H. Humphrey III, Atty. Gen., Catherine M. Keane, Asst. Atty Gen., St. Paul, Todd Webb, Clay County Atty., Moorhead, for appellant.

Steven P. Russett, Asst. State Public Defender, St. Paul, for respondent.

## OPINION

RUSSELL A. ANDERSON, Justice

Armed with a .22–caliber semiautomatic rifle, respondent, 15–year–old Jan Michael Hough and three friends set out to "shake up the community" of Barnesville, Minnesota, on February 14, 1996. The group first went to Barnesville High School where they intended to shoot at the school building. When the school custodian appeared outside the school they decided instead to go to the high school principal's home. At about 10:45 p.m., Hough and the three others drove to the home of the Barnesville High School Principal, Scott Staska. As they neared the Staska home, the driver turned off the lights and stopped the car. Hough rolled down the passenger-side window, grabbed the rifle, hoisted it to his shoulder and fired seven shots into the Staska home. They then sped away in the car.

The bullets pierced the walls of the home. Scott Staska and his wife, Julie, were talking in their bedroom when they heard the loud "bangs." Sleeping nearby were the four Staska children. As Mr. Staska got up to investigate, he heard the sound of screeching tires. Mr. Staska went to the bedroom of his two sons where he discovered three bullet holes in the wall, one just inches from his son Timmy's head. Aware now that the loud sound was caused by gunshots, Mr. Staska told his wife and called the police. Mrs. Staska, shocked by the incident, took the sleeping boys into their sisters's room on the back side of the home. As she picked Timmy up from bed, Mrs. Staska noticed plaster

dust had fallen on her son's head from the bullet hole just inches away.

Hough was certified for prosecution as an adult. He waived his right to a jury trial and following trial to the court he was found guilty of six counts of assault in the second degree—one count for each occupant of the home—in violation of Minn.Stat. §§ 609.222, subd. 1 and 609.02, subd. 10(1) (1996). The trial court referred to the doctrine of transferred intent to convict Hough of the assaults against Mrs. Staska and the four Staska children.

A divided panel of the court of appeals affirmed the convictions of assault with a dangerous weapon against Mr. and Mrs. Staska, but reversed the convictions as to the four Staska children. *State v. Hough,* 571 N.W.2d 578 (Minn.App.1997). The court of appeals reasoned that because Mrs. Staska actually suffered the intended harm, fear of immediate bodily harm or death, the conviction as to her could be sustained under the doctrine of transferred intent. *Id.* at 581. On the other hand, according to the court of appeals, the four children were unintended victims who suffered no harm because they were asleep; therefore, Hough could not be convicted of assaulting the children by use of the doctrine of transferred intent.[1] *Id.* at 583. We granted the state's petition for further review of the court of appeals' decision reversing Hough's convictions for the assaults against the Staska children. Hough's cross-petition for review was denied.

We conclude that the doctrine of transferred intent is not necessary to resolve this case. Instead, we affirm all of the convictions by looking to the plain language of the statute and to our earlier decisions.

## I.

Because Minnesota is a code state, we begin our analysis of this case by looking at the language of the statutes. *See* Minn.Stat. § 609.015 (1996) (abolishing common law crimes but allowing common law rules of statutory construction); *see also State v. Soto,* 378 N.W.2d 625, 627 (Minn.1985) (stating that "the legislature has exclusive province to define by statute what acts shall constitute a crime and to establish sanctions for their commission.") (citations omitted).

Hough was convicted of six counts of assault with a dangerous weapon in violation of Minn.Stat. § 609.222, subd. 1, which provides:

> Whoever assaults another with a dangerous weapon may be sentenced to imprisonment for not more than seven years or to payment of a fine of not more than $14,000, or both.

*Id.* The type of assault here involved is: "An act done with intent to cause fear in another of immediate bodily harm or death." Minn. Stat. § 609.02, subd. 10(1) (1996).[2] This provision of the Minnesota assault statute does not require a finding of actual harm to the victim. A plain reading of the statute makes it clear that the law is violated when one engages in an "act" with the intent "to cause fear in another of immediate bodily harm or death." *Id.* Intent is established if the actor "either has a purpose to do the thing or cause the result specified or believes that the act, if successful, will cause that result." Minn.Stat. § 609.02, subd. 9(4) (1996).

■ In interpreting Minn.Stat. § 609.22,[3] a statute that was repealed in 1979 but used the identical assault definition as that found in Minn.Stat. § 609.02, subd. 10(1), we stat-

---

**1.** The doctrine of transferred intent is frequently applied in cases where the accused intends to kill one person, but, because of bad aim, kills another. LaFave and Scott, *1 Substantive Criminal Law,* § 3.12(d) (1986). Transferred intent has been applied in numerous Minnesota cases. *See, e.g., State v. Ford,* 539 N.W.2d 214 (Minn.1995) (upholding attempted murder conviction using transferred intent when the intended victim died but the unintended victim did not); *State v. Sutherlin,* 396 N.W.2d 238, 240 (Minn.1986) (applying transferred intent to affirm conviction of defendant who intended to shoot at a bar patron,

but missed and killed a member of the band playing in the bar).

**2.** Under Minn.Stat. § 609.02, subd. 10, assault is defined as:

    (1) An act done with intent to cause fear in another of immediate bodily harm or death; or

    (2) The intentional infliction of or attempt to inflict bodily harm upon another.

**3.** Minn.Stat. § 609.22. Repealed by Laws 1979, c. 258, § 25, subd. 1.

ed: "The intent of the actor, as contrasted with the effect upon the victim, becomes the focal point for inquiry." *State v. Ott,* 291 Minn. 72, 75, 189 N.W.2d 377, 379 (1971). In *Ott,* we explained that the assault statute "reflects a legislative determination that the use of a dangerous weapon to criminally assault another is equally reprehensible whether or not one inflicts harm." 291 Minn. at 77, 189 N.W.2d at 380. While it is true that the effect of the assault on the victim is frequently introduced at trial as evidence of the defendant's intent, it is not essential for a conviction under the statute. 291 Minn. at 74, 189 N.W.2d at 378. Our decision in *State v. Rieck,* 286 N.W.2d 724 (Minn.1979), further supports this proposition. In *Rieck,* the defendant threw a firebomb into a home, intending to silence a 13–year–old witness who lived there. The intended victim was not home; however, her parents and three siblings were. We upheld consecutive sentences for aggravated assault against each family member who was in the home when it was firebombed because the defendant "knew, or should have known, that there would be multiple victims" in the home at the time. *Id.* at 727.

■ It is clear to us that the legislature intended to forbid conduct that is done with the intent of causing fear in another of "immediate bodily harm or death," without regard to whether the victim is aware of the conduct. The crime is in the act done with intent to cause fear, not in whether the intended result is achieved. Further, the assailant's knowledge of the presence of a particular victim is not essential to sustain a conviction under the statute.

■ We now determine if the convictions as to all of the occupants of the Staska home can be sustained under the statutory analysis recited above. We review criminal bench trials the same as jury trials when determining whether the evidence is sufficient to sustain convictions. *See State v. Cox,* 278 N.W.2d 62, 65 (Minn.1979).

■ We first address Hough's contention that because he testified that he intended only "to scare [Mr.] Staska," his convictions against Mrs. Staska and the four children cannot be sustained. There is no merit in this contention. A factfinder evaluates the credibility of witnesses and need not credit a defendant's exculpatory testimony. *See State v. Starkey,* 516 N.W.2d 918, 922 (Minn.1994) (citing *State v. Moore,* 438 N.W.2d 101, 108 (Minn.1989); *State v. Berry,* 309 N.W.2d 777, 784 (Minn. 1981)). In *State v. Abeyta,* 328 N.W.2d 443 (Minn.1983), two separate convictions were affirmed after the defendant fired a shotgun at a house occupied by two people. This court rejected the defendant's argument that he intended to only startle the occupants, not put them in fear of bodily harm or death. *Id.* at 445. A factfinder may reject such an exculpatory statement if the evidence as a whole supports a finding that the actor intended the natural and probable consequences of his actions.

■ The trial court convicted Hough for the assault against Mr. Staska, finding: "by his act of shooting seven bullets into the home of Scott Staska, [Hough] intended to cause Mr. Staska fear of immediate bodily harm or death." The court also found that Hough fired at an area of the house "which might logically be the location of other rooms, including bedrooms in which the family would be sleeping at that time of night." Finally, the trial court found that, "[i]t was a highly probable consequence that others in the home would be victims of [Hough's] actions."

While the trial court referred to the doctrine of transferred intent when it convicted Hough for the assaults against Mrs. Staska and the four children, the findings of the trial court support the conclusion that Hough acted with intent to cause fear of immediate bodily harm or death to all of the occupants of the home. In effect, the trial court convicted Hough because it found that Hough intended the natural and probable consequences of his actions. *See, e.g.,* Minn.Stat. § 609.02, subd. 9(4) (1996); *see also State v. Cooper,* 561 N.W.2d 175, 179 (Minn.1997) (stating that factfinder may infer that the defendant intended the natural and probable consequences of his actions).

■ When an assailant fires numerous shots from a semiautomatic weapon into a home, it may be inferred that the assailant intends to cause fear of immediate bodily harm or death to those within the home. As the trial court noted, it was a natural and probable consequence that Hough's actions would endanger people other than Mr. Staska. Such intentional behavior is not excused simply because Hough claims he did not know others were present in the home or because others within the home were not immediately aware of the dangerous act. Therefore, we reverse the decision of the court of appeals and affirm the trial court's conclusion that Hough is guilty of six counts of assault in the second degree, one count for each member of the Staska family.

## II.

■ The court of appeals did not reach the sentencing issue that was before it because it remanded this matter to the trial court for resentencing. Because we reverse the court of appeals and reinstate the judgment of the trial court regarding the convictions, we now consider the issue as to whether the trial court's sentence unfairly exaggerates the criminality of Hough's conduct.

For the two assaults against the Staska boys, the trial court departed durationally from the guideline sentence of 36 months and sentenced Hough to two consecutive executed terms of 72 months (144 months total). As to the assaults against the remaining family members, the trial court departed dispositionally from the guidelines and stayed four consecutive prison terms of 36 months each (144 months total).

The trial court cited three main reasons for the upward departure: (1) the crime was committed by a group of four; (2) the crime invaded the zone of privacy of the Staska home; and (3) the crime was against children of vulnerable ages. The first two reasons [4] relied upon by the trial court are valid. Crimes committed by groups of three or more persons are treated as aggravating factors by Minnesota's guidelines. *See* Minnesota Sentencing Guidelines II.D.02. Upward departures are appropriate where a defendant "invades the zone of privacy that surrounds the victim's home." *State v. Kindem,* 338 N.W.2d 9, 18 (Minn.1983). The trial court's use of consecutive sentences is supported by the sentencing guidelines and this court's previous decisions. *See* Minnesota Sentencing Guidelines II.F; *see also Rieck,* 286 N.W.2d 724, 726–727 (affirming five consecutive sentences for aggravated assault against five different victims who were in the same home).

Hough does not argue that the durational departures were unjustified or that the use of consecutive sentences was other than permissible under the guidelines. Rather, he argues that imposition of multiple sentences, one per victim, unfairly exaggerated the criminality of his conduct. We disagree.

■ An appellate court will not interfere with a trial court's discretion in sentencing unless the sentence is disproportionate to the offense. *See State v. Schantzen,* 308 N.W.2d 484, 487 (Minn.1981). A trial court's decision regarding permissive, consecutive sentences will not be disturbed unless the resulting sentence unfairly exaggerates the criminality of the defendant's conduct. *See State v. Norris,* 428 N.W.2d 61, 70 (Minn. 1988).

A trial judge sits with a unique perspective on all stages of a case, including sentencing, and the trial judge is in the best position to evaluate the offender's conduct and weigh sentencing options. *See State v. Back,* 341 N.W.2d 273, 275 (Minn.1983). Here, the trial judge noted the severity of Hough's actions at sentencing:

> "You blamed the system. You blamed the government. You blamed the people that ratted on you. Nobody in the backseat shot that gun. Jan Hough shot that gun. Jan Hough is going to do the consequences for that very, very dangerous act." [5]

---

4. The third reason relied upon by the trial court, the age of the Staska children, is misplaced. Nothing in the record indicates that Hough exploited the children based upon age. *See State v. Givens,* 544 N.W.2d 774, 776 (Minn.1996) (stating that victim's vulnerability due to age "which was known to" and "actively capitalized on" by defendant constituted valid aggravating factor).

5. The trial court also referred to Hough's lack of remorse. Generally, a defendant's remorse

We will not disturb permissive sentences without a showing that the sentence unfairly exaggerates the criminality of a defendant's conduct. Hough has made no such showing; therefore, we affirm the sentence of the trial court.

Reversed. Judgment of the trial court reinstated.

PAGE and LANCASTER, JJ., took no part in the consideration or decision of this case.

bears only on whether a trial court will depart dispositionally, not on a decision to depart durationally or with respect to consecutive sentences. *See Back,* 341 N.W.2d at 275. Lack of remorse can relate back to show the seriousness of the crime committed. *See State v. McGee,* 347 N.W.2d 802, 806, n. 1 (Minn.1984). Here, the trial judge considered remorse in terms of the seriousness of Hough's actions.