*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1463**

State of Minnesota,
Respondent,

vs.

Dalal Bayle Idd,
Appellant.

**Filed June 13, 2016
Affirmed
Hooten, Judge**

Hennepin County District Court
File Nos. 27-CR-14-6550, 27-CR-14-6564, 27-CR-14-6739

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Elizabeth R. Johnston, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Dan Rasmus, Hovland & Rasmus, PLC, Edina, Minnesota (for appellant)

Considered and decided by Halbrooks, Presiding Judge; Hooten, Judge; and Jesson, Judge.

**U N P U B L I S H E D   O P I N I O N**

**HOOTEN**, Judge

Appellant challenges the district court's imposition of consecutive sentences for his convictions of first-degree assault and first-degree aggravated robbery, arguing that the consecutive sentences unfairly exaggerate the criminality of his conduct. Because

appellant's crimes affected multiple victims and his consecutive sentences do not unfairly exaggerate the criminality of his conduct, we affirm.

## FACTS

On March 9, 2014, appellant Dalal Bayle Idd, who was 18 years old, used methamphetamine and went to a fitness center with his cousin with the intent of robbing someone.[1] At the fitness center, Idd assaulted a man, knocking him unconscious, and stole his wallet and cell phone. As a result of the assault, the victim sustained broken bones. After fleeing the fitness center, Idd entered a nearby home through the garage and punched and kicked the homeowner. The homeowner's wife and children were in the home at the time of the assault. Idd left the home after the homeowner's wife screamed, but entered the home a second time and continued to assault the homeowner. As a result of the assault, the homeowner suffered numerous injuries, including multiple facial fractures.

Idd was charged with one count of first-degree aggravated robbery and one count of third-degree assault for the assault of the man at the fitness center. Idd was charged with one count of first-degree assault and two counts of first-degree burglary for his entry into a nearby home and his assault upon the homeowner. The next day, while being detained at the Hennepin County Adult Detention Center following his arrest for these offenses, Idd repeatedly punched a guard in the face. Idd was charged with one count of fourth-degree assault in connection with this incident.

---

[1] The facts in this section are based on the allegations made in the complaints filed in this case, Idd's admissions at the plea hearing, and the record.

After Idd was charged by three complaints, the district court ordered evaluations regarding his competence to proceed to trial and his criminal responsibility. Due to Idd's refusal to cooperate with her evaluation, the first evaluator, Dr. Dawn Peuschold, was unable to offer an opinion as to Idd's competence to proceed or his criminal responsibility. After completing a second evaluation of Idd's competence, Dr. Peuschold recommended finding Idd incompetent to proceed, but eventually opined that Idd was competent to proceed to trial following a third evaluation of his competence.

Following Dr. Peuschold's final evaluation, the district court ordered another evaluation of Idd's criminal responsibility. After interviewing Idd and reviewing police records, medical records, and Dr. Peuschold's evaluations, the evaluator, Dr. Bruce Renken, stated that "the clinical picture associated with [Idd's] psychotic symptoms is more consistent with a substance-induced psychotic disorder than with a primary psychotic disorder." Dr. Renken opined that Idd's "altered mental status at the time of the alleged offenses was primarily due to voluntary substance intoxication" and concluded that he should be considered criminally responsible.

The defense engaged a forensic psychologist, Dr. Paul Reitman, to evaluate Idd's competence and criminal responsibility. Dr. Reitman stated that "it is difficult to assess whether or not [Idd's] psychosis was totally drug induced or whether or not . . . it [was] a primary developing psychotic disorder." Ultimately, Dr. Reitman opined that Idd was competent to proceed and was criminally responsible.

On April 27, 2015, Idd pleaded guilty to all six counts without an agreement from the state regarding sentencing. Following the plea hearing, Idd moved for a downward

3

dispositional sentencing departure. Idd argued that he was amenable to probation because he committed the offenses while experiencing mental health issues, but had since received treatment. Idd also argued that he was amenable to probation because he expressed remorse, had strong family support, had a minimal criminal history, and was very young at the time of the offenses. Idd also noted that his co-defendant received a downward dispositional departure.

The district court denied Idd's motion for a downward dispositional departure, stating that it could not "find that [Idd was] particularly amenable to probation to the degree that [it] need[ed] to depart and grant the motion for a dispositional departure." The district court sentenced Idd to 57 months on the first-degree aggravated robbery count involving the man at the fitness center and to 103 months on the first-degree assault count involving the homeowner. The district court ordered that the sentences run consecutively. The district court also imposed sentences of 68 months and 88 months on the two burglary counts involving the homeowner and 19 months on the fourth-degree assault count involving the guard, to run concurrently with the other sentences. This appeal followed.

## D E C I S I O N

Idd does not dispute that his sentences are within the presumptive ranges under the sentencing guidelines, but argues that the district court unfairly exaggerated the criminality of his conduct by imposing consecutive sentences for the convictions of first-degree assault and first-degree aggravated robbery. We review a district court's decision to impose permissive consecutive sentences for an abuse of discretion. *State v. Vang*, 774 N.W.2d 566, 584 (Minn. 2009). "A [district] court's decision regarding permissive, consecutive

4

sentences will not be disturbed unless the resulting sentence unfairly exaggerates the criminality of the defendant's conduct." *State v. Hough*, 585 N.W.2d 393, 397 (Minn. 1998). Past sentences imposed on similarly situated defendants provide guidance in determining whether a sentence exaggerates the criminality of a defendant's conduct. *Id.* "[C]onsecutive sentencing is appropriate where more than one victim is assaulted in order to recognize the severity of each assault." *State v. Branson*, 529 N.W.2d 1, 4 (Minn. App. 1995), *review denied* (Minn. April 18, 1995).

Idd argues that his conduct during the robbery at the fitness center and the assault on the homeowner should be considered a single behavioral incident. Regardless of whether Idd's conduct on March 9, 2014, is considered to be a single incident or multiple incidents, the district court's imposition of consecutive sentences was permissive and not a departure. Minn. Stat. § 609.035 (2012) generally prohibits imposing multiple sentences for multiple crimes committed as part of a single behavioral incident. Under the multiple victim exception to this rule, however, a court may impose "multiple sentences for multiple crimes arising out of a single behavioral incident if: (1) the crimes affect multiple victims; and (2) multiple sentences do not unfairly exaggerate the criminality of the defendant's conduct." *State v. Ferguson*, 808 N.W.2d 586, 590 (Minn. 2012) (quotation omitted). And, if an offender is being sentenced for multiple felony convictions for certain crimes, including first-degree aggravated robbery and first-degree assault, the district court may impose consecutive sentences. Minn. Sent. Guidelines 2.F.2.a.(1)(ii), 6 (Supp. 2013).

Because Idd's criminal conduct involved multiple victims, the district court had a legal basis to impose consecutive sentences, even if his behavior constituted a single

behavioral incident. Therefore, we need not decide whether Idd's conduct constituted a single behavioral incident. Rather, the only issue that we need to decide is whether imposing consecutive sentences unfairly exaggerated the criminality of Idd's acts.

The district court explained that it imposed consecutive sentences for the convictions of first-degree assault and first-degree aggravated robbery because there "were two different victims . . . , two completely separate circumstances and, . . . to do concurrent sentences would do an injustice to the pain that they have . . . suffered." Idd argues, however, that the consecutive sentences exaggerate the criminality of his conduct because the district court failed to consider his mental illness, his youth, and the sentence imposed on his co-defendant.

"[T]he mere fact that a mitigating factor is present in a particular case does not obligate the court to place defendant on probation or impose a shorter term than the presumptive term." *State v. Pegel*, 795 N.W.2d 251, 253–54 (Minn. App. 2011) (quotation omitted). Furthermore, "as long as the record shows the sentencing court carefully evaluated all the testimony and information presented," we will not interfere with a sentencing court's exercise of discretion. *Id.* at 255 (quotation omitted).

First, Idd argues that the district court failed to consider his mental illness as a mitigating factor. "[E]xtreme" mental illness that "deprives the defendant of control over his actions" may constitute a mitigating factor in sentencing. *State v. McLaughlin*, 725 N.W.2d 703, 716 (Minn. 2007) (quotation omitted). However, a defendant's mental impairment at the time of the offense due to the voluntary use of intoxicants is not a mitigating factor. Minn. Sent. Guidelines 2.D.3.a.(3) (Supp. 2013).

At sentencing, the district court stated that it believed Idd's conduct was a result of his substance use and that he suffered from "a mental illness . . . that was either started by or enhanced by [his] chemical use." While acknowledging Idd's mental illness and its role in the offenses, the district court denied his motion for a dispositional departure and imposed consecutive sentences on two of Idd's convictions, explaining that he was concerned about Idd's commitment to sobriety and noting that Idd had previously been hospitalized because of violent behavior caused by his substance abuse, yet continued to use drugs, culminating in the offenses at issue. The district court also stated that Idd's behavior during the offenses was so dangerous that the victims could have died. Contrary to Idd's contention that the district court failed to consider his mental illness, the record reflects that the district court acknowledged that Idd was mentally ill, but was unconvinced that Idd's mental illness was not caused by or exacerbated by his substance abuse. Moreover, the district court balanced its recognition that Idd's behavior may have stemmed from mental illness, which was either caused by or exacerbated by his substance abuse, with its concern that Idd posed a risk of future violent behavior. The record reflects that the district court properly considered Idd's psychosis at the time of the offense in imposing its sentence.

Idd concedes that he was legally an adult at the time of the offenses, but argues that the district court erred in failing to consider his "youth" as a mitigating factor in sentencing. While the district court did not explicitly state whether it was considering Idd's age in its sentencing decision, the district court carefully explained its conclusion that the likelihood

7

of Idd relapsing and committing other violent offenses, the severity of his crimes, and his attacks on multiple victims weighed more heavily than the mitigating factors cited by Idd.

Finally, Idd argues that the fact that his co-defendant received a downward dispositional departure supports his argument that the imposition of consecutive sentences unfairly exaggerates the criminality of his conduct. However, "[a] defendant is not entitled to a reduction in his sentence merely because a co-defendant or accomplice has been convicted of a lesser offense or received a lesser sentence." *State v. Starnes*, 396 N.W.2d 676, 681 (Minn. App. 1986). Furthermore, because Idd's co-defendant was involved in only one of the three violent assaults committed by Idd, the co-defendant's sentence provides no guidance regarding Idd's culpability. Given the multiple violent assaults, the multiple victims, and the district court's finding that Idd's mental illness was either caused by or exacerbated by his chemical use, Idd has not shown that the sentence unfairly exaggerates the criminality of his conduct.

Additionally, contrary to Idd's argument that his sentence exaggerates the criminality of his conduct, the district court's imposition of consecutive sentences is consistent with sentencing in comparable cases. In *Hough*, a fifteen-year-old defendant fired seven shots into the local high school principal's home. 585 N.W.2d at 394. Following trial, Hough was found guilty of six counts of second-degree assault, one for each of the occupants of the home. *Id.* at 395. For two of the assault convictions, the district court departed durationally from the guideline sentence of 36 months and sentenced Hough to two consecutive terms of 72 months. *Id.* at 397. Hough argued that the district court's imposition of multiple sentences unfairly exaggerated the criminality of his

conduct. *Id.* The Minnesota Supreme Court rejected Hough's argument, stating that the district court was in the best position to evaluate the defendant's conduct and noting the district court's recognition of the severity of Hough's actions. *Id.* Like Hough's crimes, Idd's crimes involved multiple victims and were described by the district court as extremely dangerous. While the district court in *Hough* departed durationally and imposed consecutive sentences on a 15-year-old defendant, here the district court imposed on an 18-year-old defendant presumptive sentences and ordered that they run consecutively. *Hough* supports our conclusion that the district court did not abuse its discretion in sentencing Idd.

Under these circumstances, we conclude that none of the factors cited by Idd, alone or collectively, supports a conclusion that the district court abused its discretion by imposing consecutive sentences on the first-degree aggravated robbery and first-degree assault convictions.

**Affirmed.**