*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A22-1702**

State of Minnesota,
Respondent,

vs.

Dennis Lee Busse,
Appellant.

**Filed November 20, 2023**
**Affirmed**
**Halbrooks, Judge**[*]

Clearwater County District Court
File No. 15-CR-22-119

Keith Ellison, Attorney General, Lydia Villalva Lijo, Assistant Attorney General, St. Paul, Minnesota; and

Kathryn Lorsbach, Clearwater County Attorney, Bagley, Minnesota (for respondent)

Cathryn Middlebrook Chief Appellate Public Defender, Suzanne M. Senecal-Hill, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Worke, Presiding Judge; Ross, Judge; and Halbrooks,

Judge.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**HALBROOKS**, Judge

Appellant challenges his conviction of felony fifth-degree assault-fear, arguing that the evidence was insufficient to prove that he intended to cause A.A. to fear immediate bodily harm or death. We affirm.

**FACTS**

Appellant Dennis Lee Busse was in a group outpatient program at a community center in Clearwater County. In March 2022, A.A., a counselor for the program, drove to pick up and transport clients to a group session that was scheduled to take place from 9:00 a.m. to 12:00 p.m. at the community center. A.A. drove to an address in Rice Lake and encountered Busse. A.A. asked Busse if he would be attending the group session that morning. It seemed to A.A. that Busse did not want to attend, so A.A. told Busse that he would excuse him. Busse responded to A.A. aggressively stating, "What the f-ck you mean excuses?" A.A. responded stating, "No, that's not what I said," clarifying that he had said he would "excuse [Busse] for the day." Busse responded stating, "No, the f-ck you didn't." A.A. told Busse that he would not tolerate his behavior and that he was discharged from the program. Busse swore at A.A. as A.A. drove away.

Before continuing his route, A.A. stopped by the community center to inform his colleagues of his hostile encounter with Busse, out of concern that Busse might come to the community center. Approximately 30 minutes later, A.A. left the community center to

2

continue the transport route.[1] Before A.A. returned with the other clients, Busse arrived at the community center.

F.S., a community health outreach worker, was working at the community center that morning. After Busse arrived, an employee at the community center asked F.S. if the security guard was in the building because Busse was in the group room and was not in a good mood. Upon seeing Busse, F.S. perceived him to be kind of angry. Busse told F.S. that he was not happy with A.A. and that he wanted to fight A.A. F.S. tried to help Busse and went outside with him, where Busse calmed down.

After finishing his route between approximately 9:00 and 9:10 a.m., A.A. drove into the community center's north parking lot near the entrance closest to the group room. A.A. saw Busse and F.S. standing outside that entrance, felt worried and considered parking on the other side of the community center but did not. A.A. parked about 10 to 20 feet away from where Busse was standing and then exited the transport van. A.A. and Busse approached each other and a roughly 20-minute-long encounter commenced between them. When A.A. told Busse that he needed to leave, Busse became angry.

When A.A. and Busse were within five to ten feet of each other, Busse spat on A.A. A.A. once again attempted to explain the earlier misunderstanding to Busse, claiming that he had told Busse that he was "excused." Busse responded aggressively stating, "No, the f-ck you didn't." A.A. told Busse that he was discharged from the program and tried to walk around Busse to enter the building. A.A. testified that Busse sidestepped in a fast-

---

[1] It is unclear whether 30 minutes had elapsed since A.A.'s encounter with Busse or since A.A. arrived at the community center.

paced motion to block off A.A.'s path to the door, which made him feel concerned that Busse would try to physically harm him. A.A. told Busse that he had misinterpreted what he had said and that he was discharged from the program. In response, Busse spat on A.A. again. A.A. continued to feel worried for his physical safety and told Busse that if he tried to assault him, he would call the police. Busse told A.A. to go ahead. As A.A. called the police, Busse drove off. By the time the police arrived, Busse had left the community center.

F.S. was also outside the community center when A.A. pulled up, and he witnessed the encounter. F.S. testified that A.A. "set off" Busse when he jumped out of the transport van and told Busse he needed to leave without attempting to deescalate the situation. F.S. stated that Busse did not block A.A.'s path but "was letting him by."

Based on this incident, respondent State of Minnesota charged Busse with one count of felony fifth-degree assault under Minn. Stat. § 609.224, subd. 4(b) (2020). A jury trial was held where the only evidence presented was testimony from the state's witnesses, A.A. and F.S. The jury returned a guilty verdict, convicting Busse of assault-fear. The district court imposed a sentence of 28 months in prison.

This appeal follows.

## DECISION

Busse challenges the sufficiency of the evidence underlying his conviction of felony fifth-degree assault-fear, contending that the state did not prove beyond a reasonable doubt that he acted with intent to cause A.A. to fear immediate bodily harm or death.

4

To convict Busse of felony fifth-degree assault-fear, the state was required to prove that Busse acted "with intent to cause fear in another of immediate bodily harm or death" within three years "of the first of any combination of two or more previous qualified domestic violence-related offense convictions or adjudications of delinquency." Minn. Stat. § 609.224, subds. 1(1), 4(b) (2020). Busse stipulated to having the prior qualified convictions. Therefore, the issue is whether the evidence was sufficient to prove beyond a reasonable doubt that Busse acted with intent to cause A.A. to fear immediate bodily harm or death. "With intent to" means "that the actor either has a purpose to do the thing or cause the result specified or believes that the act, if successful, will cause that result." Minn. Stat. § 609.02, subd. 9(4) (2020). "Bodily harm" means "physical pain or injury, illness, or any impairment of physical condition." Minn. Stat. § 609.02, subd. 7 (2020). "A mere *potential* to cause bodily harm through the transfer of bodily fluids or feces does not satisfy the legal standard for bodily harm." *State v. Struzyk*, 869 N.W.2d 280, 289 (Minn. 2015).

"An assault-fear offense 'does not require a finding of actual harm to the victim.'" *State v. Fleck*, 810 N.W.2d 303, 308 (Minn. 2012) (quoting *State v. Hough*, 585 N.W.2d 393, 395 (Minn. 1998)). The focal point of the inquiry is the defendant's intent, not the effect on the victim. *Id.* However, the effect on the victim may be considered as evidence of the defendant's intent. *Hough*, 585 N.W.2d at 396. Cases where intent to cause fear is proved typically include evidence of the defendant's use of a verbal threat, weapon, or physical contact. *See, e.g., State v. Caruthers*, No. A16-0587, 2017 WL 164417, at *3 (Minn. App. Jan. 17, 2017) (concluding that defendant's intent to cause victim to fear

5

immediate bodily harm could be reasonably inferred from defendant's verbal threats that included yelling profanity and the phrase, "Let's go outside," to the victim in addition to previously threatening to "kick [the victim's] a--"); *State v. Kastner*, 429 N.W.2d 274, 275 (Minn. App. 1988) (concluding that defendant's intent to cause victim to fear immediate bodily harm could be reasonably inferred from defendant's threatening statements and brandishing of scissors and screwdrivers), *rev. denied* (Minn. Nov. 16, 1988); *State v. Nelson*, No. A14-0810, 2015 WL 853492, at *3-4 (Minn. App. Mar. 2, 2015) (concluding that evidence supported reasonable inference of intent to cause fear because defendant grabbed and pushed victim), *rev. denied* (Minn. May 19, 2015).[2]

While the state may, in rare circumstances, establish a defendant's intent through direct evidence, *State v. Griese*, 565 N.W.2d 419, 425 (Minn. 1997), the element of intent is generally proved circumstantially by drawing inferences from a person's words or actions in light of the surrounding circumstances. *Nelson v. State*, 880 N.W.2d 852, 860 (Minn. 2016); *see also State v. Fardan*, 773 N.W.2d 303, 321 (Minn. 2009) (noting that the jury draws an inference of intent "from the totality of circumstances" (quotation omitted)).

**Insufficient Direct Evidence of Busse's Intent**

When a conviction is based on direct evidence, we apply the traditional standard, limiting our review to a "painstaking analysis of the record to determine whether the evidence, when viewed in the light most favorable to the conviction, was sufficient to

---

[2] Nonprecedential opinions may only be cited as persuasive authority. *See Dynamic Air, Inc. v. Bloch*, 502 N.W.2d 796, 800 (Minn. App. 1993).

permit the jurors to reach the verdict which they did." *State v. Silvernail*, 831 N.W.2d 594, 603 (Minn. 2013) (Stras, J., concurring). Direct evidence is evidence that, "if believed, directly proves the existence of a fact without requiring any inferences by the fact-finder." *Id.* at 604I. Here, Busse's conduct and stated desire to fight A.A. do not constitute direct evidence of his intent because, if believed, they do not prove that Busse acted with the purpose of causing A.A. to fear immediate bodily harm or death absent an inference. Accordingly, we apply the circumstantial-evidence standard of review. *Loving v. State*, 891 N.W.2d 638, 643 (Minn. 2017).

**Sufficient Circumstantial Evidence of Busse's Intent**

Circumstantial evidence differs from direct evidence in that it "always requires an inferential step to prove a fact." *State v. Harris*, 895 N.W.2d 592, 599 (Minn. 2017) (quotation omitted). When a conviction is based on circumstantial evidence, we apply a heightened, two-step standard of review. *Silvernail*, 831 N.W.2d at 603. First, we identify the circumstances proved at trial, construing the evidence in the light most favorable to the verdict and deferring to the fact-finder's determinations. *Id.* at 598-99. Second, we independently examine the reasonable inferences that could be drawn from the circumstances proved. *Id.* at 599. In this second step, we do not defer to the jury's choice between reasonable inferences. *Loving*, 891 N.W.2d at 643. "[T]he inquiry is not simply whether the inferences leading to guilt are reasonable. Although that must be true in order to convict, it must also be true that there are no other reasonable, rational inferences that are inconsistent with guilt." *State v. Al-Naseer*, 788 N.W.2d 469, 474 (Minn. 2010) (quotation omitted).

In this case, the evidence presented proved the following circumstances. A.A., a counselor, drove to pick up Busse, his client, for a group session that morning and a misunderstanding ensued. Busse responded aggressively, using profanity, despite A.A.'s attempt to clarify the misunderstanding. A.A. told Busse he was discharged from the group outpatient program because of his behavior. Busse continued to swear at A.A.

A.A. informed his colleagues at the community center about his hostile encounter with Busse out of concern that Busse might come to the community center. Busse arrived at the community center in a bad mood. An employee looked for a security guard to help respond to Busse. Busse appeared angry and told F.S that he was not happy with A.A. and that he wanted to fight him. F.S. tried to help Busse calm down.

A.A. felt worried when he returned and saw Busse outside the community center. A.A. told Busse multiple times that he needed to leave, that he was discharged from the program, and that he had misinterpreted what he had said earlier. Busse responded aggressively, using profanity, and spat on A.A. twice. Busse quickly sidestepped in front of A.A. to block A.A.'s path to the community center's entrance. A.A. felt concerned for his physical safety and told Busse that if he tried to assault him, he would call the police. Busse told A.A. to call the police. When A.A. called the police, Busse drove away.

Busse does not dispute that it is reasonable to infer from these circumstances that he intended to cause A.A to fear immediate bodily harm. But he contends that an alternative rational hypothesis inconsistent with guilt exists: that he intended to express his displeasure at the fact that A.A. wrongly (1) accused him of making up excuses for not

8

attending the group meeting that morning and (2) discharged him from the group program. We disagree.

Independently examining the reasonable inferences that might be drawn from these circumstances, we recognize that a fact-finder "is permitted to infer that a person intends the natural and probable consequences of their actions." *State v. Johnson*, 616 N.W.2d 720, 726 (Minn. 2000). A natural and probable consequence of Busse's words and actions in light of the surrounding circumstances is that A.A. would fear immediate bodily harm.

Further, a rational hypothesis inconsistent with guilt must be based on more than mere conjecture or speculation. *Al-Naseer*, 788 N.W.2d at 330. To support his alternative rational hypothesis, Busse reasons that expressing displeasure and anger does not constitute assault and that he experienced a high level of emotional distress, given the impact of being discharged from the program. Busse points to evidence of what he did not do in support his alternative rational hypothesis: he never uttered any threatening words toward A.A. or made any physically threatening moves as if to harm him. While the circumstances proved are consistent with the evidence that Busse points to, the evidence is insufficient to make Busse's rational alternative hypothesis a reasonable one. Considering one, or even some, of Busse's conduct in isolation, it might be reasonable to infer that he intended to express displeasure. However when considered as a whole, Busse's conduct is inconsistent with that of someone who merely intends to express displeasure.

In sum, the circumstances proved support a reasonable inference that Busse intended to cause A.A. to fear immediate bodily harm or death and do not support Busse's rational alternative hypothesis that he merely intended to express displeasure about how

9

A.A. treated him. This is true even if Busse did not use a verbal threat, weapon, or physical contact. It is not reasonable to infer that Busse had a hostile encounter with A.A. that resulted in his discharge from the group program, traveled to the community center where he knew A.A. would be, stated his desire to fight A.A., disregarded A.A.'s requests that he leave and attempts to explain the misunderstanding, spoke aggressively and profanely, spat on A.A. twice, blocked A.A.'s path to the entrance, and told A.A. to call the police to merely express his displeasure.

Accordingly, viewing the evidence as a whole and in the light most favorable to the conviction, the circumstances proved support only one reasonable inference—that Busse intended to cause A.A. to fear immediate bodily harm or death. The evidence is sufficient to support Busse's conviction of felony fifth-degree assault-fear.

**Affirmed.**