In the WELFARE OF T.N.Y.

No. C3-00-2166.

Court of Appeals of Minnesota.

Aug. 28, 2001.

Pamela Marie Miller, William J. Mavity, Mavity & Associates, Minneapolis, MN, (for appellant).

Susan Gaertner, Ramsey County Attorney, Mark Nathan Lystig, Assistant Ramsey County Attorney, St. Paul, MN, (for respondent).

Considered and decided by RANDALL, Presiding Judge, STONEBURNER, Judge, and HUSPENI, Judge.*

## OPINION

STONEBURNER, Judge

Appellant T.N.Y. argues that the evidence is insufficient to support his adjudication of delinquency for an assault in the second degree. Because the juvenile court based its finding of an intent to cause fear of immediate bodily harm solely on the effect T.N.Y.'s actions had on the victim police officer, and the record does not otherwise support a finding of intent, we reverse.

## FACTS

St. Paul police executed a search warrant for appellant T.N.Y.'s family's home. At the time, only children were in the home. The children testified that they

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

were fearful based on the fact that their house had been shot at previously.

Before entering the home, the police detonated a "flash-bang device" in the rear of the house for the purpose of distracting or frightening the people in the house. Three police officers entered the front door using a bunker[1] that displayed the word "POLICE ." The bunker shielded the three officers, who entered single file. A dog charged at Officer Donald Grundhauser, who entered first. He pushed the dog away, but when the dog approached him again, he shot the dog, yelling "[i]t's the dog." Once inside, the officers announced their entry and looked to see if anyone was in the front of the house. They found no one. T.N.Y.'s sisters, ages 17 and nine, and his nine-year-old cousin were in the father's bedroom. T.N.Y., age 13, and his brother, age 16, ran into another bedroom.

The officers proceeded down the hallway and kicked in a bathroom door. Then, T.N.Y.'s brother came out of the bedroom, and following the officers' directions, he kneeled and then laid down in the hallway facing the officers just outside the bedroom door. T.N.Y. and his brother testified that the brother, not T.N.Y., had their father's .22 caliber rifle in his hands when he dropped down on his knees. All three police officers testified that T.N.Y.'s brother did not have a gun and that as he laid down, T.N.Y. came out of the bedroom pointing the gun down the hallway in their direction. Officer Donald Chouinard yelled, "Gun," and yelled more than once at T.N.Y., "Drop the gun, drop the gun." Officer Chouinard testified that T.N.Y. was not sighting the weapon, did not point the gun in a threatening way directly at the officers, or indicate by his voice or manner

---

1. A bunker is a large bulletproof shield with a small window through which the officer looks.

that he was going to shoot. All three officers testified that T.N.Y. hesitated and then dropped the gun and layed down on top of it.

T.N.Y.'s counsel attempted to impeach the testimony of Officer Grundhauser and the third officer, John Wright, with their police reports. In their reports, written the day of the incident, both officers omitted the details that T.N.Y. had pointed the gun towards them or hesitated in dropping the gun upon their demands. Officer Chouinard was the only officer to write in his report that T.N.Y. looked out the bedroom door, pointed the gun down the hallway towards them, and took another step out the door before dropping the gun.

The juvenile court found the officers' testimony "highly credible." The court stated:

These officers were in a state of heightened alert given the dangerous situation that they found themselves in entering this home. When a human being is in that sense of heightened alert all of their senses are very acute. There was absolutely no hesitation at all by these officers [about] whom the individual was that they saw pointing the gun towards them. Indeed, the testimony at the conclusion of the state's case of Officer Chouinard was absolutely chilling in terms of how frightened he still was at the prospect of what had transpired in the home nearly two months earlier. This kind of a situation, when a police officer finds him or herself with a gun being pointed at him or her and telling the individual to put the gun down, to put the gun down, and the individual is not responding, clearly understanding that it's a police officer, is a very, very dangerous situation indeed. And in terms of the intent to cause fear or that being the result, that clearly was palpa-

ble to feel that from this officer some two months later.

\* \* \* \*.

I do think the state has met its burden of proof, \* \* \* first of all, that Officer Chouinard was assaulted, that is being placed in fear as he has testified \* \* \*.

The juvenile court found that all of the elements of the delinquency petition for assault in the second-degree had been proved beyond a reasonable doubt. T.N.Y. appeals.

## ISSUE

Is the evidence sufficient, as a matter of law, to support appellant T.N.Y.'s adjudication for delinquency of assault in the second degree?

## ANALYSIS

■■■ On appeal from a determination that each of the elements of a delinquency petition have been proved beyond a reasonable doubt, "an appellate court is limited to ascertaining whether, given the facts and legitimate inferences, a fact-finder could reasonably make that determination." *In re Welfare of S.M.J.*, 556 N.W.2d 4, 6 (Minn.App.1996) (citing *State v. Merrill*, 274 N.W.2d 99, 111 (Minn. 1978)). This court must assume that the fact-finder believed the state's witnesses and disbelieved any contrary evidence. *State v. McKenzie*, 511 N.W.2d 14, 17 (Minn.1994); *State v. Bias*, 419 N.W.2d 480, 484 (Minn.1988).

■■■ T.N.Y. argues that the juvenile court erred in finding the testimony of the police officers about who had the gun more credible than his and his brother's testimony. A fact-finder evaluates the credibility of witnesses and need not credit any exculpatory testimony. *State v. Hough*, 585 N.W.2d 393, 396 (Minn.1998). The officers' reports and testimony consistently state T.N.Y. held the gun. Therefore, the

juvenile court could reasonably find that T.N.Y., not his brother, held the gun.

 T.N.Y. argues that the juvenile court cannot find that the police officers' testimony was credible when their reports directly contradict that conclusion. *See Dufrane v. Commissioner of Pub. Safety*, 353 N.W.2d 705, 707 (Minn.App.1984) (stating because no evidence directly contradicted district court's view that police officer's testimony was more credible, court could make its own assessment of credibility). "Inconsistencies in testimony and conflicts in evidence do not automatically render the testimony and evidence false and are not bases for reversal," especially when the victim is recounting a traumatic or stressful event. *State v. Bakken*, 604 N.W.2d 106, 111 (Minn.App.2000) (citations omitted), *review denied* (Minn. Feb. 24, 2000).

Although the court did not directly address the inconsistencies between the officers' written reports and their testimony, the court expressly found the officers' testimony more credible: "There was absolutely no hesitation at all by these officers." The reports are not directly contradictory to their testimony but simply failed to include details later included in their testimony. In addition, Officer Chouinard's police report and testimony are consistent with the other officers' testimony. The juvenile court could reasonably conclude that the officers' testimony was credible despite the fact that two reports did not provide the detail given in their testimony.

 T.N.Y. argues that the evidence is insufficient to support the court's finding that he intended to cause fear of immediate bodily harm, and that the juvenile court incorrectly based its finding of intent solely on the effect T.N.Y.'s actions had on Officer Chouinard. We agree.

A person commits assault in the second degree if he or she performs an act "with intent to cause fear in another of immediate bodily harm or death" or intentionally inflicts or attempts to inflict "bodily harm upon another" using a dangerous weapon. Minn.Stat. §§ 609.02, subd. 10, .222 (2000). The term "intentionally" is defined as:

[T]he actor either has a purpose to do the thing or cause the result specified or believes that the act performed by the actor, if successful, will cause that result.

Minn.Stat. § 609.02, subd. 9(3) (2000). The term "with intent to" means

[T]he actor either has a purpose to do the thing or cause the result specified or believes that the act, if successful, will cause that result.

*Id.* subd. 9(4) (2000).

 Intent may be proved by circumstantial evidence, including drawing inferences from the defendant's conduct, the character of the assault, and the events occurring before and after the crime. *Davis v. State*, 595 N.W.2d 520, 525–26 (Minn.1999). " 'The intent of the actor, as contrasted with the effect upon the victim, becomes the focal point for inquiry.' " *Hough*, 585 N.W.2d at 396 (quoting *State v. Ott*, 291 Minn. 72, 75, 189 N.W.2d 377, 379 (1971)). "The crime is in the act done with intent to cause fear, not in whether the intended result is achieved." *Id.*

The court incorrectly indicated that fear being the result of an act could, by itself, establish intent and found that Officer Chouinard's fear of immediate bodily harm was "palpable * * * some two months later." This analysis focuses solely on the officer's fear and fails to indicate that the court considered the intent of T.N.Y., which must be the "focal point for inquiry." *See id.* The court's finding of intent does not indicate that the court considered T.N.Y.'s conduct, the character of the al-

■■■■■■■■■■■■■■■■■■■■■

leged assault, or the events occurring before and after the crime. Therefore, the juvenile court applied the wrong standard of intent by resting its finding solely on the effect that T.N.Y.'s actions had on Officer Chouinard.

■■■■ Pointing a weapon at a police officer or another person has been held to supply the requisite intent to cause fear. *See State v. Patton,* 414 N.W.2d 572, 574 (Minn.App.1987) (concluding defendant brandished knife in a manner that the jury could have found that it was used as a dangerous weapon to cause fear in another of immediate bodily harm); *see, e.g., State v. Kastner,* 429 N.W.2d 274, 276 (Minn. App.1988) (stating defendant pointed scissors and screwdriver at victim, assumed a position which the victim considered offensive, and made threatening statements to victim), *review denied* (Minn. Nov. 16, 1988); *State v. Soine,* 348 N.W.2d 824, 827 (Minn.App.1984) (affirming defendant is convicted of second-degree assault because he brandished a knife "within striking distance" of his victim), *review denied* (Minn. Sept. 12, 1984). In this case, T.N.Y. was a 13-year-old child facing three police officers protected by a large bunker and pointing their weapons at him. T.N.Y. did not point the gun directly at the officers nor did he make any threatening comments or motions that would indicate he intended to shoot the gun. T.N.Y. merely hesitated before dropping the gun and complying with the officers' directions. Therefore, the record is insufficient to support the court's finding that beyond a reasonable doubt T.N.Y. intended to cause fear of immediate bodily harm.

## DECISION

The juvenile court erred in finding an intent to cause fear of immediate bodily harm based solely on the effect T.N.Y.'s actions had on Officer Chouinard, and the record does not support his adjudication for delinquency of assault in the second degree.

**Reversed.**