*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1522**

State of Minnesota,
Respondent,

vs.

Devon Scott Martin,
Appellant.

**Filed September 2, 2014
Affirmed in part and remanded
Ross, Judge**

St. Louis County District Court
File No.: 69DU-CR-12-3002

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Mark S. Rubin, St. Louis County Attorney, Jonathan D. Holets, Assistant County Attorney, Duluth, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Rachel F. Bond, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Reilly, Presiding Judge; Ross, Judge; and Bjorkman, Judge.

**U N P U B L I S H E D   O P I N I O N**

**ROSS**, Judge

A jury convicted Devon Martin of second-degree assault, terroristic threats, and felony domestic assault after he seized his two-year-old daughter, threateningly gestured

to her mother with his fists when she tried to intervene, and brandished a handgun when she called the police. Because the state offered sufficient evidence that Martin possessed the requisite specific intent for second-degree assault, we affirm his conviction. But because the state concedes that both of his assault convictions stemmed from the same behavioral incident and that the district court should not have sentenced Martin on both convictions, we remand for the district court to modify the sentence.

**FACTS**

St. Louis County charged Devon Martin with second-degree assault, terroristic threats, and felony domestic assault after an altercation between Martin, his two-year-old daughter, and her mother, C.W. At Martin's trial, the jury heard testimony describing the following events.

Martin and C.W. had an on-again, off-again romantic relationship that spanned several years, and they had two children together. Although Martin did not have legal custody of the children, he saw them regularly, usually several times a week and always with C.W. present. C.W. arranged to meet a friend in a Duluth park one evening in August 2012, and she brought one of the children along, a two-year-old girl. She had no plans to meet Martin, but she encountered him in the park. Martin called to his daughter, and she ran to him. Martin picked her up and began carrying her away. C.W. objected, repeatedly asking Martin to return the girl. Martin refused. He walked out of the park toward nearby woods. C.W. followed. Martin raised his fist, threatening to hit C.W. whenever she got close.

2

C.W. dialed 9-1-1 and activated the speakerphone feature. Martin released their daughter. As C.W. gathered her up, Martin brandished a black handgun and said, "You're really going to call the cops when I . . . have this, you stupid bitch?" The jury heard a recording of C.W.'s 9-1-1 call reflecting part of the verbal exchange. C.W. was unsure whether Martin actually aimed the gun at her, not having been watching him as she walked away with the girl.

C.W. went home and spoke with Duluth Police Officer Michael Saburn, recounting the events. C.W. said that she asked Martin, upon seeing his gun, if he "was going to . . . shoot up [her] house." She said that Martin responded that she would "see what's coming" if she "[f - - - ed] with [him] again." The jury heard a recording of C.W.'s discussion with Officer Saburn.

Martin did not testify. The jury found him guilty of all three offenses charged. The district court dismissed the charge of terroristic threats at sentencing because the state had acknowledged that it arose from the same behavioral conduct as the second-degree assault offense. But the state contended, during trial and at sentencing, that Martin's act of raising his fist and threatening to hit C.W. provided a separate basis for the domestic assault charge. Applying the sentencing guidelines and following the recommendations of the presentence investigation report, the district court sentenced Martin to 36 months in prison for the second-degree assault conviction and to 15 months in prison for the domestic-assault conviction, the prison terms to be served concurrently.

Martin appeals.

# DECISION

## I

Martin argues that the state did not prove that he specifically intended to instill in C.W. the fear of death or immediate bodily harm. The assault charged is a specific intent offense, *State v. Fleck*, 810 N.W.2d 303, 309 (Minn. 2012), so the state must prove that Martin intended to cause C.W. to fear immediate bodily harm or death, *see* Minn. Stat. § 609.02, subd. 10(1) (2012). When a defendant's intent is an element of the offense, the conviction ordinarily relies on the circumstantial evidence offered to prove the intent, and we apply a heightened standard on review of convictions that rest on circumstantial evidence. *State v. Porte*, 832 N.W.2d 303, 309 (Minn. App. 2013).

Our circumstantial-evidence review follows a two-step analysis. We first identify the circumstances proved. *State v. Andersen*, 784 N.W.2d 320, 329 (Minn. 2010). In doing so, we defer to the jury's decision to accept circumstances as proved and to reject evidence that contradicts them. *Id.* We then independently examine "the reasonableness of all inferences that might be drawn from the circumstances proved," including any inferences that support hypotheses other than guilt. *Id.* We will affirm if the circumstances proved are consistent with guilt and "inconsistent with any other rational hypothesis." *State v. Al-Naseer*, 788 N.W.2d 469, 473 (Minn. 2010) (quotation omitted).

The circumstances proved here establish that Martin encountered C.W. and their daughter in the park and that he called to his daughter and attempted to take her from C.W. They establish that Martin raised his fist threatening to strike C.W. while she followed and pleaded with him to return the child to her. Martin argues that the evidence

4

does not prove that he intended to threaten C.W. with the gun. He does not dispute that he took out the gun and called C.W. a "stupid bitch" for "call[ing] the cops when [he] . . . ha[d] this," referring to the handgun. He argues that the circumstances do not prove his specific intent to harm C.W. because they do not establish that he pointed the gun at C.W. and because C.W. was moving away from him when he made his comment about the gun.

This is a close issue on the facts presented, but Martin's arguments are ultimately unconvincing. By the time Martin brandished his handgun, he had already created a tense and threatening environment, having cocked his fist at C.W. as she pleaded for him to release the child back to her. His drawing the gun was his immediate response to C.W.'s calling the police, and his brandishing and comment sharply rebuking her for calling the police while he had the handgun could readily be understood to imply that she should have known better than to provoke him to immediately use the gun. We recognize that other interpretations of his motive might exist, but we are persuaded that this is the only reasonable interpretation available.

Martin's general-intent argument, based on the fact that he may not have aimed his gun directly at C.W., misreads our decision in *In re Welfare of T.N.Y.*, 632 N.W.2d 765 (Minn. App. 2001). In *T.N.Y.* a 13-year-old boy holding a handgun emerged from a room and encountered three armed police officers shielded behind a portable bunker and pointing their weapons at him. *Id.* at 767. The boy did not point the gun at the officers or otherwise act as if he was tempted to shoot, and, after briefly hesitating, he dropped the gun at the officers' command. *Id.* at 767–68. We held that these facts were insufficient to

5

show the intent necessary to prove second-degree assault. *Id.* at 770. But this case is different. Here Martin brandished the gun while making a hostile comment that would inform anyone in C.W.'s shoes that she has just provoked the immediate use of the firearm.

Martin makes a distance-based argument, and it is less persuasive. We have noted that imminent fear depends not on the space that separates the parties but on "[t]he threat to use [the weapon] and the ability to use it immediately." *State v. Kastner*, 429 N.W.2d 274, 275 (Minn. App. 1988) (holding that jury could reasonably infer intent to cause fear of immediate bodily harm where defendant wielded scissors and screwdriver, assumed an offensive position, and said she could strike at any time), *review denied* (Minn. Nov. 16, 1988); *see also State v. Patton*, 414 N.W.2d 572, 574 (Minn. App. 1987) (affirming finding of intent where defendant brandished buck knife and testimony indicated he held it one or two feet from victim); *State v. Soine*, 348 N.W.2d 824, 827 (Minn. App. 1984) (affirming intent to cause fear where defendant, standing several feet from victim, wielded and threatened to use a knife while in striking distance of victim), *review denied* (Minn. Sept. 12, 1984). That C.W. was retreating from Martin when he threatened her with the gun is irrelevant to whether he intended his brandishing and comment to instill fear. Unlike a knife or screwdriver, a handgun's lethality does not depend on the wielder's reach. Given the nature of firearms, Martin was close enough to C.W. to inflict the same injury on her that he could inflict within an arm's length.

We hold that the evidence is sufficient to prove that Martin possessed the requisite intent, and we therefore affirm his second-degree assault conviction.

## II

Martin also contends that the district court erred by sentencing him for both his second-degree assault conviction and his domestic-assault conviction because they arose from the same behavioral incident. Because the facts are undisputed, we review de novo whether Martin's assault convictions arose from a single behavioral incident. *State v. McCauley*, 820 N.W.2d 577, 591 (Minn. App. 2012), *review denied* (Minn. Oct. 24, 2012); *and see* Minn. Stat. § 609.035, subd. 1 (2012) (establishing that when a person's conduct constitutes multiple offenses, he may be punished for only one of those offenses).

Martin's contention is persuasive. The prosecutor told the jury that it could find Martin guilty of second-degree assault or terroristic threats by virtue of brandishing the handgun. He also argued that it could find Martin guilty of felony domestic assault either because he waved a gun at C.W. or because he repeatedly threatened her with his fists. Because the state proposed no other theory, the jury must have convicted Martin of second-degree assault because he menaced C.W. with the gun. But the state offered alternative theories for the domestic-assault charge, including Martin's brandishing of the gun, and the jury did not specify which theory it accepted. The state concedes that it did not meet its burden here, and it agrees that Martin's domestic-assault sentence must therefore be vacated. We vacate Martin's 15-month sentence and remand to the district court for resentencing.

**Affirmed in part and remanded.**