*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1087**

State of Minnesota,
Respondent,

vs.

Paris Pierre Pollard,
Appellant.

**Filed June 15, 2015
Affirmed
Ross, Judge**

Ramsey County District Court
File No. 62-CR-13-9061

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Peter R. Marker, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Rochelle R. Winn, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Peterson, Presiding Judge; Ross, Judge; and Johnson, Judge.

# U N P U B L I S H E D   O P I N I O N

**ROSS**, Judge

Paris Pollard shoved his way into the apartment of a woman who had just argued with Pollard's mother. He learned which one of two occupants was the woman he sought,

and he chased her outside to her car and beat her head against the ground. The state charged Pollard with first-degree burglary, and a district court found him guilty after a bench trial. Pollard argues that we must reverse his conviction because the evidence was insufficient to convict him of first-degree burglary and because he never properly waived his right to a jury trial. Neither argument persuades us to reverse.

## FACTS

St. Paul police officers learned of a break-in and assault at an apartment on an evening in October 2013. Police arrived and spoke to J.K., who was injured and bleeding from her head. J.K. said that Paris Pollard, along with two other men and Pollard's mother, Tracey Pollard, had barged into the apartment she shared with her roommate, T.T. In barging in, Pollard knocked T.T. into the refrigerator. J.K. explained that she fled and that Pollard pursued her outside, where he pushed her to the ground and slammed her head into the concrete. Police arrested Pollard and Ramsey County charged him with first-degree burglary. *See* Minn. Stat. § 609.582, subd. 1(c) (2012).

The district court conducted a bench trial. The record includes no formal waiver of Pollard's constitutional right to a jury trial. At a hearing two weeks before the trial, Pollard's attorney told the district court that Pollard had "indicated to [him] that it would be [Pollard's] intent to try this case to the Court and not to a jury." The only other time a jury-trial waiver was discussed was on the first day of the bench trial. The district court judge then stated, "And we are here for trial. As I understand it, Mr. Pollard is waiving the jury. We're anticipating a Court trial this afternoon." The parties agreed with the judge's assessment, and Pollard never objected.

J.K. testified that she was taking trash to the garbage dumpsters behind her apartment building when she encountered her neighbor, Tracey. J.K. and Tracey started to argue. The argument escalated. Tracey was still screaming at J.K. when J.K. went back inside.

J.K. testified that she told T.T. about the argument. Tracey and three men soon started knocking on the back door of J.K.'s apartment. One of the men was Tracey's son, Paris Pollard. As T.T. approached the door, the group opened it themselves and pushed T.T. aside. T.T. started to call the police but Tracey grabbed the phone from her. J.K. testified that Pollard approached and confronted her about the argument with his mother. J.K. ran downstairs with her cell phone, got into her car, and dialed 9-1-1. Pollard followed after her, pulled her from the car, took her cell phone, and pushed her to the ground. Pollard repeatedly smashed J.K.'s head into the pavement, and he kicked her in the face. T.T. went outside and yelled at Pollard, and he fled the area. J.K. and T.T. called the police. Police arrived and an ambulance took J.K. to the hospital with head injuries.

T.T. also testified. She said that after J.K. returned from taking out the trash she told T.T. about her argument with Tracey. Within twenty minutes, she heard the voices of people coming up the stairs toward their apartment. Pollard knocked on the door but then "kind of shoved the door to come in without [T.T.'s] permission," and he pushed her out of the way, knocking T.T. into the refrigerator. The state introduced a photo taken after the incident showing that the refrigerator was askew, appearing to be several inches out of place. Pollard was followed into the apartment by his mother and two men. He

3

confronted T.T. about being disrespectful to his mother, but Tracey interrupted and pointed out J.K. as the one she argued with. J.K. fled the apartment and Pollard followed her downstairs. Still in the apartment, T.T. fought to retrieve her phone from Tracey. She succeeded and she left the apartment and headed downstairs. She saw Pollard beating J.K. T.T. testified that she screamed, and Pollard and the two other men then ran off. She and J.K. called the police and J.K. was taken to the hospital.

The district court found Pollard guilty of first-degree burglary. It found that the state had proven beyond a reasonable doubt that, after Pollard entered the apartment without consent, he committed an assault. The judge stated:

> [T]hat conclusion can be arrived at -- by the evidence the State submitted about what Mr. Pollard did immediately after entry . . . in essence, that he shoved [T.T.] out of the way, that he shoved her so hard that he knocked her into the refrigerator and displaced the refrigerator, and that at the time that he did that he thought that she was a person who had disrespected his mother.

The district court sentenced Pollard to 66 months in prison. Pollard appeals.

## D E C I S I O N

Pollard challenges his conviction on two grounds. He argues that the evidence is insufficient to sustain the conviction of first-degree burglary because the state did not present evidence that he assaulted T.T. when he pushed her into the refrigerator. Pollard contends alternatively that we must reverse his conviction because the district court failed to obtain a valid waiver of his constitutional right to a trial by jury.

4

# I

The state charged Pollard with first-degree burglary under Minnesota Statutes section 609.582, subdivision 1(c) (2012). For the court to convict Pollard under this statute, the state needed to prove that Pollard entered a building without consent with the intent to commit a crime or that he entered a building without consent and committed a crime while he was in the building. Minn. Stat. § 609.582, subd. 1 (2012). Because the underlying crime alleged was assault, the state also needed to prove that Pollard assaulted a person "within the building or on the building's appurtenant property." *Id.*, subd. 1(c). Pollard questions the sufficiency of the state's evidence supporting the second element— the assault—because, he argues, the state failed to present any evidence that T.T. suffered bodily harm from his conduct. We review Pollard's conviction to determine whether, considering the evidence in the light most favorable to the verdict, a fact finder could reasonably conclude that he was guilty of the offense charged. *Bernhardt v. State*, 684 N.W.2d 465, 476–77 (Minn. 2004).

An assault can take two forms. One form is "an act done with intent to cause fear in another of immediate bodily harm." Minn. Stat. § 609.02, subd. 10(1) (2012). The other form is "the intentional infliction of or attempt to inflict bodily harm upon another." *Id.*, subd. 10(2) (2012). The district court determined that Pollard assaulted T.T. when he "shoved her so hard that he knocked her into the refrigerator and displaced the refrigerator." The state contends that the evidence of Pollard's shoving T.T. is more than sufficient to establish that Pollard intended to cause T.T. fear of bodily harm.

The evidence viewed in the light most favorable to the verdict supports the conclusion that, at the very least, Pollard intended to cause T.T. to fear bodily harm when he shoved her into the refrigerator while forcing his way into the apartment. "Intent may be proved by circumstantial evidence, including drawing inferences from the defendant's conduct, the character of the assault, and the events occurring before and after the crime." *In re Welfare of T.N.Y.*, 632 N.W.2d 765, 769 (Minn. App. 2001). Pollard was physically aggressive and extremely confrontational when he entered the apartment by force, openly angry. His conduct resulted in T.T. immediately attempting to call police. After he pushed his way in and knocked T.T. into the refrigerator, Pollard confronted her about disrespecting his mother—mistakenly believing that T.T. was the one who had argued with her. When his mother told Pollard he had the wrong person, he immediately pursued J.K., following her downstairs and violently assaulting her outside her car. These facts support the district court judge's reasonable conclusion that Pollard assaulted T.T. by intentionally causing her to fear immediate bodily harm, establishing beyond a reasonable doubt that he had committed a first-degree burglary.

The state presents alternative theories of assault to sustain the first-degree burglary conviction, including its contention that Pollard intentionally inflicted bodily harm when he shoved T.T. or when he beat J.K. outside. Because we conclude that the conviction can be sustained on the district court's finding that Pollard assaulted T.T. when he entered the apartment and shoved her forcefully into the refrigerator, we need not reach the alternative assault theories.

6

## II

Pollard argues that his conviction should be reversed and the case remanded for a new trial because the district court failed to obtain a valid waiver of his constitutional right to a jury trial. A defendant can waive his right to a jury trial when the waiver occurs "personally, in writing or on the record in open court, after being advised by the court of the right to trial by jury, and after having had an opportunity to consult with counsel." Minn. R. Crim. P. 26.01, subd. 1(2)(a). The state concedes that there was no valid personal waiver under rule 26.01, but it maintains that reversal is not required.

Because Pollard did not object to the lack of a proper jury-trial waiver before or during his trial, we review only for plain error. *See State v. Kuhlmann*, 806 N.W.2d 844, 852 (Minn. 2011). To meet the plain-error standard, Pollard must show that the district court's decision was erroneous, that the error was plain, and that the error affected his substantial rights. *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998). Even if Pollard satisfies these three requirements, we will reverse his conviction only if necessary "to ensure fairness and the integrity of the judicial proceedings." *Id*.

The state concedes the first two plain-error requirements, admitting that the inadequate jury-trial waiver was plain error under *State v. Little*, 851 N.W.2d 878, 883–84 (Minn. 2014). To meet the third requirement—that the error affected his substantial rights—Pollard must show that the inadequate waiver "was prejudicial and affected the outcome of the case." *Griller*, 583 N.W.2d at 741. But Pollard argues that he is not required to offer particularized facts to show prejudice under *Little*. It is true that the *Little* court rejected the notion that the defendant in that case was required to offer

evidence "on whether he would have sought a jury trial had he been properly informed of his rights." 851 N.W.2d at 885. But the court did not declare that *no* defendant would have to offer such evidence. *Little* is easily distinguished from this case. The defendant in *Little* never properly waived his jury-trial right to an amended charge of first-degree criminal sexual conduct, which "significantly increased the range of potential punishment." *Id*. at 884–85. It was unclear from the record that the defendant knew about this charge at all before trial, and his defense counsel stated after trial that the defendant "may not have had a full appreciation of what was happening in the days leading up to trial because everything was moving at 'laser light speed.'" *Id*. at 885. These unique facts prevented the supreme court from assuming "that Little and his counsel fully discussed the advantages and disadvantages of waiving a jury trial on the significantly more serious charge of first-degree criminal sexual conduct." *Id*. For this reason, the supreme court reversed the first-degree criminal-sexual-conduct conviction and remanded the case. *Id*. at 886.

Pollard's circumstances are quite different and do not promote the same outcome. The record does not suggest that Pollard was ever unaware of the charges he faced. Nor does it include any circumstances that cast any doubt on the assumption that Pollard and his attorney discussed Pollard's constitutional right to a jury trial before he opted for a bench trial. *See State v. Fields*, 279 Minn. 374, 377, 157 N.W.2d 61, 63 (1968) ("[I]n the absence of contrary evidence, there is a presumption that appointed counsel consulted with defendant and advised him of his rights."). Pollard makes no other argument tending to show that he would have chosen a jury trial if the district court had required an express

waiver of that right. Because Pollard did not show that the inadequate waiver affected his substantial rights, he does not satisfy the plain-error standard. We affirm his conviction.

**Affirmed.**