# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A24-0321

Abdullahi Aden Ibrahim, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed November 12, 2024**
**Affirmed in part, reversed in part, and remanded**
**Harris, Judge**

Stearns County District Court
File No. 73-CR-20-1881, 73-CR-20-1386

Cathryn Middlebrook, Chief Appellate Public Defender, Sean McGuire, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Janelle P. Kendall, Stearns County Attorney, Kyle R. Triggs, Assistant County Attorney, St. Cloud, Minnesota (for respondent)

Considered and decided by Harris, Presiding Judge; Larkin, Judge; and Smith, Tracy M., Judge.

## SYLLABUS

For a defendant's guilty plea to first-degree assault to be accurate, the defendant must either expressly admit to causing great bodily harm under Minnesota Statutes section 609.02, subdivision 8 (2018), or expressly acknowledge evidence in the record that would allow the district court to infer that the defendant had caused the victim to suffer great bodily harm.

**OPINION**

**HARRIS**, Judge

In this appeal denying postconviction relief, appellant argues that he must be permitted to withdraw his guilty pleas to first- and second-degree assault because his guilty pleas were inaccurate. We affirm in part because appellant's plea to second-degree assault was accurate. But because appellant did not directly admit to causing great bodily harm or expressly acknowledge facts in the record related to the severity of the victim's injury, we reverse in part and remand for further proceedings.

**FACTS**

The facts are not in dispute. In February 2020, respondent State of Minnesota charged appellant Abdullahi Aden Ibrahim with first-degree assault, in violation of Minn. Stat. § 609.221, subd. 1 (2018), and second-degree assault, in violation of Minn. Stat. § 609.222, subd. 1 (2018). The complaint alleged that in December 2019, Ibrahim got into a physical fight with the victim in a car, during which the victim was stabbed and that medical personnel treated the victim for numerous stab wounds and lacerations, including a collapsed lung.

In March 2020, the state charged Ibrahim in a separate court file with second-degree assault-fear, in violation of Minn. Stat. § 609.222, subd. 1. The complaint alleged that Ibrahim brandished a knife in a threatening manner while being escorted out of a bar.

Per a global plea agreement, Ibrahim pleaded guilty to one count of first-degree assault for the stabbing incident and one count of second-degree assault-fear for the brandishing incident at the bar. The parties agreed that Ibrahim would be released pending

2

sentencing and that, if he complied with the conditions of his release, he would receive concurrent executed sentences of 86 and 27 months for the first- and second-degree assault charges, respectively. If Ibrahim did not follow conditions of release prior to sentencing, however, the state would be permitted to seek an executed sentence of 124 months. Ibrahim violated the terms of his conditional release, and the district court sentenced him to consecutive sentences of 103 months for first-degree assault and 21 months for second-degree assault.

Ibrahim filed a petition for postconviction relief arguing that his pleas were inaccurate. Ibrahim argued that his plea to first-degree assault was inaccurate because the factual basis did not establish an injury that created a high probability of death. He argued that his plea to second-degree assault was inaccurate because the factual basis did not establish that he intended to cause fear of immediate bodily harm or death. Following additional briefing on whether the injury that occurred during the first-degree assault could constitute other serious bodily harm, the district court denied Ibrahim's postconviction petition. Ibrahim appeals.

**ISSUES**

I.     Did the district court abuse its discretion by denying Ibrahim's petition for postconviction relief because Ibrahim's guilty plea to first-degree assault was inaccurate?

II.    Did the district court abuse its discretion by denying Ibrahim's petition for postconviction relief because Ibrahim's guilty plea to second-degree assault was inaccurate?

3

## ANALYSIS

Ibrahim argues that the district court erred by denying postconviction relief because his guilty pleas were inaccurate. We review the denial of a postconviction petition for an abuse of discretion. *Pearson v. State*, 891 N.W.2d 590, 596 (Minn. 2017). "A postconviction court abuses its discretion when it has exercised its discretion in an arbitrary or capricious manner, based its ruling on an erroneous view of the law, or made clearly erroneous factual findings." *Id.* (quotation omitted). Legal issues are reviewed de novo and factual findings are reviewed for clear error. *Id.* The validity of a guilty plea is a question of law that this court reviews de novo. *State v. Raleigh*, 778 N.W.2d 90, 94 (Minn. 2010).

The district court must allow a defendant to withdraw a guilty plea, "upon a timely motion and proof to the satisfaction of the court that withdrawal is necessary to correct a manifest injustice." Minn. R. Crim. P. 15.05, subd. 1; *see State v. Ecker*, 524 N.W.2d 712, 715-16 (Minn. 1994) (applying Minn. R. Crim. P. 15.05, subd. 1, in a postconviction challenge). "A manifest injustice exists if a guilty plea is not valid. To be constitutionally valid, a guilty plea must be accurate, voluntary, and intelligent. A defendant bears the burden of showing his plea was invalid." *Raleigh*, 778 N.W.2d at 94 (citations omitted).

Ibrahim challenges only the accuracy of his guilty pleas. "It is the responsibility of the trial judge [] to ensure that an adequate factual basis has been established in the record. *Ecker*, 524 N.W.2d at 716. This requirement "protect[s] a defendant from pleading guilty to a more serious offense than he could be convicted of were he to insist on his right to trial." *State v. Trott*, 338 N.W.2d 248, 251 (Minn. 1983). For a plea to be accurate, a plea

4

must be supported by a proper factual basis, with "sufficient facts on the record to support a conclusion that defendant's conduct falls within the charges to which he desires to plead guilty." *State v. Iverson*, 664 N.W.2d 346, 349-50 (Minn. 2003) (quotation omitted).

First, Ibrahim argues that his plea to first-degree assault was inaccurate because the plea colloquy did not contain sufficient facts to support a finding that his conduct caused a bodily injury that created a "high probability of death" or "other serious bodily harm." Second, Ibrahim argues that his plea to second-degree assault was inaccurate because the plea colloquy did not contain sufficient facts to support a finding that he intended to "cause fear of immediate bodily harm or death." We address each argument in turn.

## I. Ibrahim's guilty plea to first-degree assault was inaccurate because there was not a sufficient factual basis to establish the great-bodily-harm element of the offense.

Ibrahim challenges the accuracy of his guilty plea to first-degree assault resulting in great bodily harm. Minn. Stat. § 609.221, subd. 1. To prove first-degree assault, the facts must establish that Ibrahim "assault[ed] another and inflict[ed] great bodily harm." *Id.* An assault includes "the intentional infliction of or attempt to inflict bodily harm upon another." Minn. Stat. § 609.02, subd. 10(2) (2018). "'Great bodily harm' means bodily injury which creates a high probability of death, or which causes serious permanent disfigurement, or which causes a permanent or protracted loss or impairment of the function of any bodily member or organ or other serious bodily harm." *Id.*, subd. 8.

The district court accepted the following factual basis for Ibrahim's guilty plea:

> STATE: Mr. Ibrahim, bringing your attention back to December 22, 2019. Do you remember that day.
> IBRAHIM: Yes.

5

STATE:  And do you understand-Have you had a chance to read the Complaint?
IBRAHIM:  Yes.

STATE:  Do you understand who the Complaint refers to - who the person in the Complaint referred to as "Victim A" is? Do you know that person?
IBRAHIM:  Yes.

STATE:  Okay. Were you with that person that evening?
IBRAHIM:  Yes.

STATE:  And you were in the City of Waite Park in Stearns County, Minnesota; is that correct?
IBRAHIM:  Yes.

STATE:  Did you get in a fight with him?
IBRAHIM:  Yes.

STATE:  Did you intentionally inflict harm upon him during that fight?
IBRAHIM:  Yes.

STATE:  Did you use a knife?
IBRAHIM:  Yes.

STATE:  And one of the injuries that he sustained was a stab wound to the chest; is that correct?
IBRAHIM:  Yes.

STATE:  Neither you nor I are doctors, but the discovery indicates that as a result of that stab wound to the chest his lung collapsed?
IBRAHIM:  Yes.

STATE:  And there's a lot of important blood vessels in the lung as well, isn't there?
IBRAHIM:  Yes.

STATE:  In short, getting stabbed in the lung is not a good thing and it is a very serious injury.  Do you agree?
IBRAHIM:  Yes.

6

> STATE:   And it's the kind of injury that could cause a person to die?
>
> IBRAHIM:   Yes.

Ibrahim argues that the "only evidence in the record is that the victim suffered a single collapsed lung, for which there is no evidence pertaining to any lasting impact on the victim."[1]  Thus, Ibrahim argues that his plea is inaccurate because the factual basis did not establish that the injury created a high probability of death or caused other serious bodily harm.  We address each form of great bodily harm in turn.

### High Probability of Death

Ibrahim argues that his plea was inaccurate because it did not establish an injury that created a high probability of death.  The state argues that Ibrahim's plea was accurate because a collapsed lung is a life-threatening injury, and Ibrahim admitted that his assault caused the victim to suffer a collapsed lung, which contains critical blood vessels, and that a collapsed lung is the kind of injury that "could cause a person to die."  We are unpersuaded.

While a collapsed lung generally could cause someone to die, this court has stated that "[u]nder the plain language of the statute, the injury itself must be life-threatening." *State v. Gerald*, 486 N.W.2d 799, 802 (Minn. App. 1992).  This means that, based on the

---

[1] The parties do not argue—and the record does not suggest—that the injury qualifies as: "serious permanent disfigurement" or "permanent or protracted loss or impairment of the function of any bodily member or organ."  Minn. Stat. § 609.02, subd. 8; *cf. State v. McDaniel*, 534 N.W.2d 290, 293 (Minn. App. 1995) (concluding that the jury had sufficient evidence to find appellant guilty of first-degree assault when the victim's injuries were two lacerations and a partially collapsed lung because the victim had permanent raised scars that constituted serious permanent disfigurement).

unique facts in the record, the injury must create a high probability of death in relation to the particular victim. *See State v. Dye*, 871 N.W.2d 916, 921-22 (Minn. App. 2015) (concluding that a gunshot wound to the lower back was not life-threatening because a CT scan revealed that the bullet traveled in a straight line without hitting any critical body parts even though a paramedic and doctor testified that based on the location of the injury they treated it as if it were life-threatening). *But see State v. Anderson*, 370 N.W.2d 703, 706 (Minn. App. 1985) (concluding that the jury could have determined that the liver laceration suffered by the victim was an injury that constituted a high probability of death because a physician testified that it was a life-threatening injury), *rev. denied* (Minn. Sept. 19, 1985).

Whether there is a sufficient factual basis to support a defendant's guilty plea is different from whether there is sufficient evidence in the record to support the conviction. When a defendant enters a guilty plea, we do not "conduct a careful analysis of the record to determine whether the evidence, viewed in the light most favorable to the conviction, was sufficient." *Dye*, 871 N.W.2d at 921. Instead, "[i]n a typical plea, where the defendant admits his or her guilt, an adequate factual basis is usually established by questioning the defendant and asking the defendant to explain in his or her own words the circumstances surrounding the crime." *Id.* The defendant is "carefully interrogated about [their] conduct," and must "admit[the] element[s] necessary to establish [their] guilt." *Rosendahl v. State*, 955 N.W.2d 294, 301-02 (Minn. App. 2021); *see Trott*, 338 N.W.2d at 252 (concluding there was a sufficient factual basis to support a plea, in part because the district court "carefully interrogated the defendant about the acts, and the defendant freely admitted" the allegations in the complaint). The district court "need not personally

interrogate the defendant," but "should be particularly wary of situations in which the factual basis is established by asking the defendant only leading questions." *Ecker*, 524 N.W.2d at 716.

"[E]xceptions exist that allow the consideration of other evidence in a 'typical' plea if expressly acknowledged by the defendant." *Rosendahl*, 955 N.W.2d at 301 (Minn. App. 2021).[2] However, a district court should not accept a guilty plea unless it is reasonably satisfied that there are "sufficient facts on the record to support a conclusion that defendant's conduct falls within the charge to which he desires to plead guilty." *State v. Iverson*, 664 N.W.2d 346, 349-50 (Minn. 2003) (quotation omitted).

In *Gerald*, where the victim suffered knife cuts on the back of his neck and his ear, the state argued that one of the cuts was near a major artery and *could have* caused death if it had hit the major artery. 486 N.W. 2d. at 802. This court rejected the argument, reasoning that "the injury itself must be life-threatening" and that the first part of the statutory definition is not satisfied if the injury merely "could have been more serious." *Id.* Similarly in *Dye,* where the victim suffered a gunshot wound to the abdomen, the state

---

[2] In *Lussier v. State*, 821 N.W.2d 581, 588-89 (Minn. 2012), the Minnesota Supreme Court concluded that the factual basis could be based on the grand jury transcript, which was admitted into the record without objection during the defendant's plea hearing. *See also In re Welfare of J.R.R.*, 648 N.W.2d 739, 743 (Minn. App. 2002) (stating there are "various ways in which a juvenile might 'admit' sufficient facts to support a legitimate plea," including "nonleading, question-and-answer interrogation about particular essential facts; the juvenile's own narrative that includes essential facts; a reference to factual allegations in a charging document or in police reports or other records, coupled with the juvenile's express and specific acknowledgment of the truth and accuracy of facts constituting the essential elements of the crime; or a written delineation of essential facts that the juvenile acknowledges or adopts as being correct").

argued that a bullet passing through a person's torso *could* hit "critical body parts" and cause death. *Dye*, 871 N.W. 2d. at 921. This court rejected the argument, reasoning that a gunshot wound is life-threatening only if it actually caused life-threatening injuries, not if it *might have* done so. *Id* at 922.

Like the circumstances in *Gerald* and *Dye*, although the victims' injury in this case may have had the potential to be life-threatening, Ibrahim did not admit that he inflicted life-threatening injuries, rather he admitted that a collapsed lung is a serious injury and that getting stabbed in the lung is the "kind of injury that *could* cause a person to die." (Emphasis added.) Here, the conviction of first-degree assault rests on evidence of potential injuries, which cannot sustain a finding that Ibrahim inflicted great bodily harm. In addition, the record does not contain any information about the severity of the victim's specific injuries, nor did Ibrahim admit that his conduct caused great bodily harm. As such, the record also does not establish that the victim's injuries did in fact create a high probability of death. To be clear, we do not suggest that a stabbing leading to a collapsed lung could never create a high probability of death. But caselaw indicates that such a determination must be based on the particular facts of a case. And in this case, the factual record is void on that issue. More facts were necessary to show that the injuries that Ibrahim inflicted did in fact create a high probability of death.

Therefore, because it is unclear from the record if the injuries suffered by the victim actually put the victim's life in danger, the factual basis was insufficient to establish that Ibrahim's conduct created a "high probability of death." *See Gerald*, 486 N.W.2d at 802-03 ("Although we find it anomalous that an individual who commits a grievous assault on

10

another may escape a first-degree assault conviction because the victim is fortunate enough to escape serious injury, we are constrained by the language of the statute.").

***Other Serious Bodily Harm***

Ibrahim argues that his plea does not establish that he inflicted "other serious bodily harm." "Other serious bodily harm" is not defined by statute, and "should be taken in the context of the other three alternative definitions." *State v. Moore*, 699 N.W.2d 733, 739 (Minn. 2005). Accordingly, courts must consider the totality of the injuries to determine whether the injuries constitute "other serious bodily harm." *See, e.g., Dye*, 871 N.W.2d at 922 (concluding that, even though a bullet wound could cause a permanent lump or persistent pain, the record was insufficient to determine the extent of the victim's pain and whether she had any permanent scarring was unknown and therefore not sufficient to constitute "other bodily injury"); *Anderson*, 370 N.W.2d at 706 (concluding that the victim's injuries taken as a whole, which included a lacerated liver, head laceration, bruises, head injuries, lapses of consciousness, and a scar, constituted "other serious bodily harm" and were within the same class or kind of injuries as the three specific categories of great bodily harm outlined in the statute).

Here, the state argues that, under *Rosendahl*, we should consider the allegations in the criminal complaint to conclude that the victim's injuries constituted "other serious bodily harm." 955 N.W.2d at 298. The state contends that it is proper to consider the complaint because Ibrahim acknowledged having read the complaint during the plea colloquy. We disagree.

11

"[I]n determining the accuracy of a guilty plea, the reviewing court does not consider allegations in the complaint unless the truthfulness and accuracy of the allegations have been expressly admitted to by the defendant." *Rosendahl*, 955 N.W.2d. at 302. The complaint alleges that the victim suffered a stab wound to the chest, a collapsed lung resulting in acute hypoxic respiratory failure, a stab wound to the armpit, a scalp laceration, and acute blood loss. Arguably, these injuries could constitute "other serious bodily harm." *See State v. Barner*, 510 N.W.2d 202 (Minn. 1993) (concluding that a swollen head that caused the victim to have difficulty eating for several days, multiple stab wounds that left scars, and an injury to the victim's hand constituted "other serious bodily harm"). However, as discussed above, Ibrahim did not expressly confirm on the record the truthfulness or accuracy of the other injures alleged in the complaint and we therefore do not consider the allegations in the complaint in determining the adequacy of the factual basis.

The record demonstrates that "one of the injuries that [the victim] sustained was a stab wound to the chest," which resulted in a collapsed lung. But Ibrahim did not admit to causing "other serious bodily harm" or expressly acknowledge medical evidence in the record pertaining to the type and severity of the victim's injuries. Here, the only evidence in the record is that the victim suffered a single collapsed lung, for which there is no evidence pertaining to any lasting impact on the victim. The record does not contain evidence that this injury created a high probability of death, that it permanently disfigured the victim, or had any long-term effects on the victim's breathing. The fact that Ibrahim acknowledged it was a "serious" injury, does not demonstrate that the state had established

a level of harm consistent with the "other serious bodily injury". Therefore, the factual basis was insufficient to establish "other serious bodily harm."

Ibrahim did not expressly admit to causing great bodily harm or expressly acknowledge particular facts about the victim's injury to allow the district court to infer that his conduct caused great bodily harm. Accordingly, the factual basis was insufficient to satisfy the accuracy requirement of a valid plea and Ibrahim's plea to first-degree assault was invalid. Therefore, the district court abused its discretion in denying Ibrahim's petition for postconviction relief regarding the first-degree assault charge.

## II. Ibrahim's guilty plea to second-degree assault was accurate based on the circumstances surrounding the conduct.

Ibrahim challenges the accuracy of his guilty plea to second-degree assault-fear. Minn. Stat. § 609.222, subd. 1. To prove second-degree assault-fear, the facts must establish that Ibrahim "assault[ed] another with a dangerous weapon." *Id.* An assault includes "an act done with intent to cause fear in another of immediate bodily harm or death." Minn. Stat. § 609.02, subd. 10(1) (2018). "'With intent to . . . means that the actor either has a purpose to do the thing or cause the result specified or believes that the act, if successful, will cause that result." Minn. Stat. § 609.02, subd. 9(4) (2018); *see also State v. Fleck*, 810 N.W.2d 303, 312 (Minn. 2012) (noting that assault-fear "is a specific-intent crime"). The district court accepted the following factual basis for Ibrahim's plea to second-degree assault-fear:

> STATE: Mr. Ibrahim, do you remember the day March 1, 2020?
> IBRAHIM: Yes.

13

STATE: And, again, have you read the Complaint that is referenced to this case?
IBRAHIM: Yes.

STATE: And there are two people in here that are listed as Witness B and Victim A. Do you know to whom they are referring?
IBRAHIM: Yes. The bouncers.

STATE: The bouncers, okay.
IBRAHIM: Yes.

STATE: And so on that day you were in the Red Carpet which is located in downtown St. Cloud, Stearns County, Minnesota; is that correct?
IBRAHIM: Yes, Your Honor – Yes.

STATE: And for some reason the bouncers and the security staff wanted you to leave the bar; is that right?
IBRAHIM: Yes.

STATE: You disagreed with that?
IBRAHIM: Yep.

STATE: All right. And as you were being escorted out and made it outside, you pulled a knife on them; isn't that correct?
IBRAHIM: Yes.

STATE: All right. In circumstances, pulling a knife on someone like that is the kind of act that causes a person to fear bodily harm or death. Do you understand that?
IBRAHIM: Yes.

STATE: And that was your intent: you wanted them to fear you. Is that understood?
IBRAHIM: Yes.

STATE: All right. You were ultimately tackled and held to the ground until police came, and they found you with that knife. Is that also right?
IBRAHIM: Yes.

14

The district court determined that Ibrahim's plea was accurate, and therefore valid, because he admitted to brandishing a knife on two bouncers after getting escorted out of the bar, and he conceded that he intended to cause the bouncers to fear bodily harm or death. Ibrahim argues that his plea to second-degree assault-fear is inaccurate because he "merely stated that he brandished the knife with the intent to cause fear—not fear of immediate bodily harm or death." In addition, Ibrahim also asserts that the record does not contain additional facts sufficient to infer intent. The state argues that Ibrahim's plea is accurate because intent can be inferred from the circumstances. We agree.

Although Ibrahim did not directly admit that he intended to cause fear of *immediate* harm or death, a guilty plea may be valid so long as the requisite factual basis was established in the plea colloquy. *See, e.g.*, *State v. Russell*, 236 N.W.2d 612, 613 (Minn. 1975) ("[Appellant's] answers to questions by the prosecutor in this case disclose a factual basis for the plea even though no question was specifically directed to the element of intent to kill."); *State v. Hopkins*, 198 N.W.2d 542, 542 (Minn. 1972) ("[Appellant's] answers to questions by the prosecutor disclose a factual basis for the plea even though no question was specifically directed to the element of intent."). The supreme court has upheld the acceptance of guilty pleas when the defendant was not questioned about intent, but the requisite intent was established by additional facts and circumstances. *Id*. Accordingly, we must consider whether the plea colloquy as a whole discloses a sufficient factual basis to establish that Ibrahim acted with the intent to cause fear of immediate harm or death.

Here, Ibrahim's intent can be reasonably inferred from his admissions. Ibrahim's admissions establish that he brandished a knife on the bouncers as he was being escorted

15

out of the bar. It is reasonable to infer that Ibrahim was in close proximity to the bouncers while being escorted out. Before the assault, Ibrahim disagreed with leaving the bar, and after the assault, Ibrahim was tackled and held to the ground until police arrived. So, although Ibrahim was never directly asked if he intended to cause fear of immediate bodily harm or death, it was reasonable for the district court to infer this based upon his admission to that that conduct.

Ibrahim's reliance on *In re Welfare of T.N.Y.*, 632 N.W.2d 765 (Minn. App. 2001) is unpersuasive. *T.N.Y.* held that intent could not be established based on the victim police officer's subjective experience alone. 632 N.W.2d at 767. More specifically, this court held that the evidence was insufficient to support a finding that the juvenile intended to cause fear of immediate bodily harm because the district court's analysis focused solely on the officer's fear and not the juvenile's intent. *Id.* at 769. The juvenile was a 13-year-old, did not point the gun directly at the three officers or make any threatening comments or motions that would indicate he intended to shoot the gun, and hesitated before dropping the gun and complying with the officers' directions. *Id.* at 770. Here, Ibrahim did more than simply make a weapon visible. And we do not infer Ibrahim's intent solely based on the bouncer's fear, but rather on Ibrahim's acts of being escorted out of the bar by bouncers, pulling the knife "on them," and the fact that his conduct required others to tackle him to the ground.

Although additional facts about the context of the assault, such as Ibrahim's specific proximity to the bouncers, could have led to a more robust factual basis, we conclude that the factual basis was sufficient to satisfy the accuracy requirement of a valid plea. *See*

16

*State v. Epps*, 977 N.W.2d 798, 802 (Minn. 2022) (concluding that, under the circumstances, a guilty-plea withdrawal was not required even though the plea colloquy that had occurred could have been substantially improved). Because the plea was valid, the district court did not abuse its discretion in denying Ibrahim's petition for postconviction relief regarding the second-degree assault charge.

## DECISION

In sum, because the factual basis for Ibrahim's guilty plea to first-degree assault was inaccurate, we reverse in part and remand for Ibrahim to withdraw his guilty plea to that charge. And because Ibrahim's guilty plea to second-degree assault was accurate, we affirm in part. If Ibrahim withdraws his guilty plea to first-degree assault on remand, the district court shall vacate his conviction for that offense. We recognize that Ibrahim pleaded guilty to both offenses as part of a global plea agreement. As "[p]lea agreements involving multiple crimes are often intricate and require a delicate balancing of considerations," the district court may also consider motions to vacate Ibrahim's second-degree assault conviction and the plea agreement on that basis. *State v. Montermini*, 819 N.W.2d 447, 454-55 (Minn. App. 2012) (quotation omitted).

**Affirmed in part, reversed in part, and remanded.**